Agustin Fabio CARREON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–00–00180–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Aug. 30, 2001.

Decided Sept. 18, 2001.

John D. MacDonald, II, Conroe, for appellant.

Gail Kikawa McConnell, Asst. Dist. Attorney-Appellate Section, Conroe, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Agustin Fabio Carreon appeals the trial court's judgment sentencing him to concurrent terms of fifty years on each of two counts of aggravated kidnapping, TEX. PEN. CODE ANN. § 20.04 (Vernon Supp.2001); thirty years on each of two counts of aggravated robbery, TEX. PEN.CODE ANN. § 29.03 (Vernon 1994); and five years on one count of deadly conduct, TEX. PEN.CODE ANN. § 22.05 (Vernon 1994). Carreon entered a plea of guilty, and the jury found him guilty as instructed.

No challenge is raised on appeal to the sufficiency of the evidence. Carreon, displaying a gun, abducted two women, Peggy McKee, age seventy-six, and her cousin, Mary Frances McKee, age eighty-three, on Christmas Eve 1999, from the Greyhound bus station in Dallas. He took one of the victims' cars and drove the victims first around Dallas, and then on Interstate 45 toward Houston. During the drive, Carreon forced the women to give him money to buy beer and cigarettes, threatened to blow their heads off, and shot his gun out the window several times.

On the south side of Conroe in Montgomery County, Carreon, still driving one of the victims' cars, became involved in an altercation with another individual driving a Mustang automobile. Carreon waived a gun out the window and chased the Mustang down Interstate 45, apparently cutting off several other drivers, and weaving in and out of the lanes of traffic. The driver of the Mustang exited the interstate near the City of Shenandoah and drove onto the access road. Carreon could not make the turn, lost control of the vehicle, and crashed in a ditch. No one was injured in the accident, but as Carreon got out of the car, he yelled at the elderly women to start pushing. At that time, several individuals confronted Carreon regarding his erratic driving behavior. One of the elderly women told one of these individuals they had been kidnapped and Carreon had a gun. The individuals grabbed Carreon and scuffled with him. It was at this time that the victims were able to get help and escape captivity. The

exit was in the immediate vicinity of the Shenandoah police station, and when Shenandoah Officer Troye Dunlop arrived, he saw a number of men scuffling with Carreon. Dunlop grabbed Carreon's weapon, handcuffed him, and put him into the patrol car. A little while later, Carreon managed to get out of the patrol car, and with his hands still handcuffed behind his back, ran away and tried to commandeer a ride from a passing motorist. After a brief chase, Dunlop tackled Carreon and returned him to the patrol car.

On appeal, Carreon raises two issues:

First, he contends the trial court committed reversible error in overruling his objection to the omission of an instruction to the jury regarding TEX. PEN.CODE ANN. § 20.04(d):

At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

During the punishment stage, counsel for Carreon requested a Section 20.04(d) instruction on releasing the victim of a kidnapping in a safe place. At that time, the trial court stated it would wait until it had heard all the evidence to see if such a charge was justified. After Carreon testified, and at the close of the defense's case, counsel again requested the charge from the Penal Code that if Carreon delivered the victims in a safe place, the offense would be a second degree felony. The assistant district attorney argued that "[g]etting in a car wreck doesn't qualify for releasing somebody in a safe place" and that there was no evidence justifying such an instruction. The trial court agreed.

The State contends, initially, that at trial Carreon failed to properly preserve this point for appellate review. The burden to demonstrate the "safe release" affirmative defense lies with a defendant under Section 20.04(d). In order to be entitled to such an instruction, a defendant must object to the absence of such an instruction or otherwise bring the matter to the trial court's attention, and the evidence at the punishment stage must raise the issue. *Posey v. State,* 966 S.W.2d 57, 63 (Tex.Crim.App.1998). The record demonstrates counsel requested such an instruction on two different occasions. We hold he sufficiently brought the matter to the trial court's attention to merit appellate review. We will, therefore, examine the law pertaining to "voluntary release in a safe place" and the evidence produced at the punishment stage to determine whether the trial court correctly refused the instruction.

Although decided under the former version of Section 20.04(d), under which the State had the burden of proving the defendant did not perform such mitigating act,[1] *Wiley v. State,* 820 S.W.2d 401, 411 (Tex.App.—Beaumont 1991, no pet.), sets forth what constitutes "voluntary release in a safe place":

"voluntary release in a safe place", should not be weighed from a standpoint of physical condition of a victim and that victim's ability to ultimately vacate or escape the immediate prevalence of the accused. It seems appropriate that any judgment or finding regarding "voluntary release in a safe place", must be viewed, weighed and determined solely from the *conduct of the accused* and not as to possibilities within speculated grasps of the victim. Being without square-on case law guidance, we conclude that an accused, in order to avail

---

**1.** *See Posey v. State,* 966 S.W.2d 57, 63 (Tex. Crim.App.1998).

himself of the mitigating effect of § 20.04(b), must have performed some overt and affirmative act that brings home to the victim that he/she has been fully released from captivity. That release must occur in a place and manner which realistically conveys to the victim that he/she is now freed from captivity and is now in circumstances and surroundings wherein aid is readily available.

*Id.* (emphasis added).

In *Hernandez v. State*, 10 S.W.3d 812 (Tex.App.—Beaumont 2000, no pet.), the court ruled that the facts showed an "escape" rather than a safe, voluntary release by the kidnapper. The victim in that case was taken into the woods thirty or forty-five minutes outside of Houston, beyond any road, where he broke free and ran into the woods, escaping but being shot in the arms, back, and legs as he crawled under some brush to elude his attackers. The only persons present in the remote location were there to kill the victim, and the fact that the victim survived and eventually made his way to a convenience store did not establish voluntary release in a safe place. *Id.* at 822.

In *Oestrick v. State*, 939 S.W.2d 232 (Tex.App.—Austin 1997, pet. ref'd), the Austin court held that the ordinary meaning of "voluntary" in the phrase "voluntary release in a safe place" includes acting of oneself; not constrained, impelled or influenced by another; resulting from free choice, without compulsion or solicitation. *Id.* at 239. In the facts developed in that case, which showed that the defendant was pursued by police, left the victim in his

truck, and fled into a nearby house where he held off police for the next two hours, did not entitle him to a "voluntary release" instruction. *Id.*[2]

■ Although the instruction was properly requested by counsel for Carreon, the trial court properly refused his request for a Section 20.04(d) instruction to the jury. The evidence does not indicate a voluntary release in a safe place. Carreon was driving his vehicle in an unsafe manner, chasing another vehicle he perceived had cut him off, and was displaying his weapon. Carreon apparently cut off a number of other vehicles and crashed in a ditch on an Interstate 45 access road, and was surrounded by a group of angry motorists. The local police department was located near the scene of this accident, but there is no evidence that Carreon knew the police department was there or that this was his intended destination. There was no evidence that the victims' freedom at this location resulted from the free choice of Carreon or of his own volition. The evidence does not show that when this accident happened, Carreon was intending to release his victims in a safe place, where assistance would be forthcoming. The evidence demonstrates that they escaped, rather than being released.

This issue is overruled.

■ In his second issue, Carreon contends the trial court erred, after the jury commenced its deliberations, in answering an inquiry from the jury regarding whether sentences imposed would be served concurrently.[3] Carreon argues that neither

---

**2.** A North Carolina statute required that the state, in a first-degree kidnapping prosecution, demonstrate, *inter alia*, that the victim was not voluntarily released in a safe place. In *State v. Heatwole*, 333 N.C. 156, 423 S.E.2d 735, 737–38 (1992), the North Carolina Supreme Court held that a kidnap victim's re-

lease by his captor when the kidnapper is aware he is cornered and outnumbered by law enforcement officers is not "voluntary."

**3.** The note from the jury asked: "Is the sentence for all 5 counts to be served concurrently or is the concurrent sentence for the

he nor his counsel was present in open court when the response to the inquiry was made by the trial court, which the record shows to have been the case and that this constitutes reversible error.

Article 36.27 of the Code of Criminal Procedure governs the procedure to be followed by the trial court in such a situation:

> When the jury wishes to communicate with the court, it shall so notify the sheriff, who shall inform the court thereof. Any communication relative to the cause must be written, prepared by the foreman and shall be submitted to the court through the bailiff. The court shall answer any communication in writing, *and before giving such answer to the jury shall use reasonable diligence to secure the presence of the defendant and his counsel,* and shall first submit the question and also submit his answer to the same to the defendant or his counsel or objections and exceptions, in the same manner as any other written instructions are submitted to such counsel, before the court gives such answer to the jury, *but if he is unable to secure the presence of the defendant and his counsel, then he shall proceed to answer the same as he deems proper.* The written instruction or answer to the communication shall be read in open court unless expressly waived by the defendant.

TEX. CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1987) (emphasis added).

We have located no Texas case law which has discussed the "reasonable diligence" required of the trial court by Article 36.27, or which establishes an appellate standard of review for the trial court's action in this regard. In *Collins v. State*, 762 S.W.2d 670 (Tex.App.—Tyler 1988, no

pet.), the court of appeals cited Article 36.27 and the reasonable diligence standard. Without referring to any facts surrounding the trial court's actions in that case, the court held that the appellant had not demonstrated that the trial court failed to use reasonable diligence to secure the presence of the appellant or his counsel. *Id.* at 673. The opinion went on to hold that the provisions of Article 36.27 do not apply to communications between the jury and the judge that do not amount to additional instructions, and that the question posed by the jury in that case, that the jury was allegedly deadlocked, did not require the judge to give an additional instruction and, therefore, Article 36.27 did not apply. *Id.* We, therefore, must determine an appropriate standard of review for the trial court's action.

A case offering some guidance is *Black v. State*, 26 S.W.3d 895 (Tex.Crim.App. 2000), in which the appellant alleged trial court error because the judge, *sua sponte*, off the record and out of the presence of counsel, dismissed a prospective juror because she was hard of hearing. In such instance, the trial judge's actions were reviewed under an abuse of discretion standard defined by the Texas Court of Criminal Appeals as to whether the trial court's ruling was outside the zone of reasonable disagreement. *Id.*; *Richardson v. State*, 879 S.W.2d 874 (Tex.Crim.App.1993).

The record shows the following, at a conference held just before the jury was called in and at the beginning of trial:

> THE COURT: ... One other thing I thought of, and maybe this can be taken care of by counsel for the State, just telling them that all penalties, prison sentences in these counts, will be served

kidnapping, robbery and deadly conduct separately." (The note was signed by the foreman.) The trial court responded as follows:

"Members of the Jury: Sentences, if any, in all 5 counts will run concurrently. Oliver S. Kitzman, Judge."

concurrently as a matter of law. Probably something that should be in the charge, but if we agree that we'll handle it that way, otherwise they'll do a lot of worrying about something that [sic] won't know about, but if we—

[ASSISTANT DISTRICT ATTORNEY]: If you [sic] like for me to add it, I don't have any problem with that. I can probably add it.

THE COURT: If we can take care of it through argument, it saves time. And time is not without meaning. Ready to proceed?

[DEFENSE COUNSEL]: We are, Your Honor.

[ASSISTANT DISTRICT ATTORNEY]: State's ready.

At a hearing held post-trial, the second-chair prosecutor testified that she was in the courtroom when the bailiff said that the jury had a written question, which was handed to the trial judge. The judge returned to chambers, the second-chair prosecutor being present, at which time the trial court announced that the question pertained to whether the sentences would run concurrently. Returning to the courtroom, neither the first-chair prosecutor nor defense counsel could be located. The bailiff attempted to locate defense counsel: he checked the courtroom, spoke with someone who knew defense counsel, had the court clerk call defense counsel's office, and searched both inside and outside the courthouse. His search took approximately ten minutes. The first-chair prosecutor testified that the State and defense agreed to, or at least did not object to, the trial court's proposal regarding informing the jury about concurrent terms and that the jury would be informed through summation rather than through an additional instruction. Defense counsel did not object or voice disagreement with this testimony. The trial judge responded to the jury in writing; he did not call them back into the courtroom for his response.

The jury's question concerned a matter on which counsel had previously agreed, or at least, to which he voiced no objection. The bailiff conducted a thorough search of the courthouse and its immediate vicinity, and was unable to locate defense counsel. Defense counsel did not inform the trial court at the post-trial hearing where he was at the time, nor did he disagree with the prosecutor's statement that the subject matter of the jury's question was something on which they had previously agreed. Carreon has not demonstrated how he was harmed by his counsel's absence when the trial court sent its response to the jury, nor has he shown that the instruction was not a correct statement of the law. Under these circumstances, we hold that the trial judge exercised reasonable diligence, as required by the statute, in attempting to locate counsel, and that he properly answered the jury's written inquiry.

This issue is overruled.

Finding no reversible error, the judgment of the trial court is affirmed.