Nicholas Duran BALLARD, Appellant,

v.

The STATE of Texas.

No. PD–725–05.

Court of Criminal Appeals of Texas.

June 7, 2006.

Elizabeth L. Derieux, Longview, for Appellant.

Ray Bowman, Asst. District Atty., Longview, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court, joined by PRICE, WOMACK, KEASLER, HERVEY, and COCHRAN, JJ.

Appellant plead guilty to aggravated kidnapping. The trial court placed him on deferred-adjudication community supervision, but one month later, the state asked the trial court to proceed to adjudication. After a hearing, the trial court adjudged appellant guilty and sentenced him to fifty years' imprisonment in the Texas Department of Criminal Justice—Correctional Institutions Division. On appeal, the court of appeals dismissed the appeal for want of jurisdiction. Thereafter, appellant filed an application for writ of habeas corpus, alleging ineffective assistance of counsel because his attorney failed to argue that appellant had voluntarily released the victim in a safe place. This Court granted the writ and remanded the cause to the trial court for a new punishment hearing on the issue of voluntary release. The trial court found that appellant had failed to show by a preponderance of the evidence that he had voluntarily released the victim in a safe place and reassessed the sentence of fifty years. The court of ap-

peals affirmed the judgment and sentence. *Ballard v. State,* 161 S.W.3d 269 (Tex. App.-Texarkana 2005). We granted appellant's sole ground for review.[1]

We previously granted relief on applicant's application for writ of habeas corpus, which was based upon ineffective assistance of trial counsel. *Ex parte Ballard,* No. 74,823, 2003 WL 22508414 (Tex.Crim.App., delivered November 5, 2003)(unpublished). This current appeal is based upon the punishment-stage proceedings subsequent to the granting of the writ. At that proceeding, both the complainant and appellant testified.

The record reflects that appellant and the complainant had lived together and had a son. Their relationship had been stormy, and the complainant admitted that appellant had beaten her on numerous occasions and that she had filed reports of threats and harassment with the Rusk County Sheriff's Office. The threats included declarations by appellant that, if she ever had another boyfriend, he would kill her. At the time of the kidnapping, she had moved with her son from the shared home to her mother's home. At the hearing, the complainant tried to minimize the events and appellant's culpability[2] and testified in ways that were contrary to the statements she made to police at the time of the incident. On cross-examination by the state, however, she conceded that the statements made to police at the time of the kidnapping were

true. In those statements, she described appellant as controlling and an habitual liar and said that she was afraid of him. .

The testimony of both the complainant and appellant reflects that appellant confronted the complainant in the parking lot of Kilgore College, where she was a student, and that, leaving his own car in the parking lot, appellant got into complainant's car with her and forced her to drive to his house.

The complainant testified that, during the drive to appellant's home, she sought help from another motorist, but without result. When they arrived at appellant's home, they entered and began to argue. At some point, they engaged in sexual activity,[3] and then the complainant drove appellant to his bank and to Kroger's grocery store to pay bills. During some of this time period, the complainant was left alone in the car with the car keys. Appellant emphasized the complainant's ability to leave. The state emphasized the complainant's fear of appellant and her fear that he would come after her if she left him stranded. The complainant's prior statements indicate that, after they returned to appellant's house, she tried to leave, but appellant restrained her and that a few minutes later a Henderson police officer arrived[4] and questioned the complainant outside appellant's home. In appellant's presence, the complainant denied that anything was wrong, but when

---

1. "The Court of Appeals erred in employing a definition of 'voluntary release' which is inconsistent with the plain meaning of the Texas kidnapping statute and this Court's well-established jurisprudence."

2. Among other things, she testified that she thought that the 50–year sentence was excessive and that she did not leave when left alone with the car keys, not because she was afraid of appellant, but because she cared for him and did not want to strand him in Henderson.

3. While described by appellant and the court of appeals as "consensual," the record from the punishment hearing indicates that the sexual conduct was, at best, coerced.

4. The record is unclear, but it may be inferred that someone at Kilgore College reported the kidnapping.

appellant went into the house, leaving her alone with the police officer, she told the officer that she was there against her will.[5] At the officer's instruction, she drove away, leaving appellant at his house. The complainant conceded during cross-examination that "the thing that separate[d]" her from appellant was the Henderson police. Appellant was arrested at his home the next day.

We granted habeas corpus relief based upon appellant's claim of ineffective assistance of counsel for failing to advance the affirmative defense of voluntary release of the complainant in a safe place at his punishment hearing, which would have reduced the offense to a second-degree felony. In granting relief, we vacated the judgment and sentence "insofar as they find [applicant] guilty of a felony of the first degree and assess punishment" and remanded for further punishment-stage proceedings. After the trial court conducted those hearings, which included the testimony of both appellant and the complainant, it found that the defense of voluntary release in a safe place had not been established and accordingly reassessed the 50-year sentence.

On appeal, appellant claimed that the evidence was legally and factually insufficient to support a first-degree aggravated kidnapping conviction. Specifically, appellant argued that the evidence was insufficient because no rational trier of fact could have found that the complainant had not been voluntarily released in a safe place, whether reviewed in the light most favorable to the verdict or in a neutral light. The court of appeals disagreed and held the evidence sufficient, saying that "[l]egally and factually sufficient evidence supported the trial court's conclusion that

[appellant]'s actions did not constitute 'voluntary release' to trigger mitigation of [appellant]'s punishment for aggravated kidnapping." *Ballard,* 161 S.W.3d at 276–77.

Appellant's sole ground in his petition for discretionary review asserts that the court of appeals "erred in employing a definition of 'voluntary release' which is inconsistent with the plain meaning of the Texas kidnapping statute and this Court's well-established jurisprudence." He argues that "[a]s a matter of law, the undisputed facts in this record constitute voluntary release in a safe place" and "[t]he evidence was neither factually or legally sufficient to support the trial court's judgment to the contrary."

Appellant acknowledges that aggravated kidnapping is a first-degree felony, punishable by a term of imprisonment for 5–99 years, or life; except as provided by Tex. Penal Code § 20.04(d), which provides that "[a]t the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." A felony of the second degree is punishable by a term of imprisonment for a term of not more than 20 years or less than 2 years, with a fine not to exceed $10,000. Tex. Penal Code § 12.33. Thus the appellant's 50-year sentence was outside the punishment range for a second-degree felony.

Appellant argues that "[a]s a matter of law, the undisputed facts in this record constitute voluntary release in a safe place." He disputes the court of appeals' conclusion that "allowing a kidnapping vic-

---

5. There is some evidence in the record that the complainant, while at appellant's home, spoke by telephone with an officer from Kilgore College and told him that she was there against her will.

tim the ability to escape does not constitute a release." *Ballard*, 161 S.W.3d at 277. Appellant insists that the complainant was completely free to leave, but chose to remain in her own car in the grocery store's parking lot while he went into the store. He points to the complainant's testimony that, during the trip to run errands, appellant left her alone while he went inside and that "she thought she was free to go and no longer felt as though she was in danger." *Id.* at 276.

Appellant also suggests that the court of appeals "essentially grafts onto the kidnapping statute an exception that the legislature did not include and a result the legislature did not intend; that is, a kidnapper who knows his victim can never voluntarily release her if he knows where she lives and they intend to continue their consensual relationship in the future." He insists that "[i]mporting such an exception would negate the legislative purpose underpinning the voluntary release provision ... to provide an incentive to kidnappers to release their kidnap victims."

Appellant lists factors considered in several courts of appeals opinions to determine whether the actor released the victim in a safe place. These factors include: the remoteness of the location; the proximity of authorities or persons who could aid or assist; the time of day; the climatic conditions; the victim's condition; and the character of, and the victim's familiarity with, the location or neighborhood. Appellant concludes that the busy grocery-store parking lot was a safe place when the complainant was alone waiting in the car at mid-morning and that she was released in that she was free to leave. He also suggests that "[t]here was no dispute that the release was voluntary" as there was no coercive law-enforcement presence or involvement nor force or threat of force from anywhere.

We reiterate that appellant's ground for review complains about the court of appeals "employing a definition of 'voluntary release'[.]" In our review of the court of appeals's opinion, we find nothing wrong with its discussion and application of the term "voluntary release." It properly discusses and applies our opinion in *Brown v. State*, 98 S.W.3d 180, 188 (Tex.Crim.App. 2003), in which we favored a narrow definition of "voluntary release," such as in the absence of rescue by the police or others or escape by the victim. *Ballard*, 161 S.W.3d at 273. It also properly held that its determination in *Carreon v. State*, 63 S.W.3d 37, 38 (Tex.App.-Texarkana 2001, pet. ref'd), that in order to trigger § 20.04(d), an accused must have performed some overt and affirmative act that informs the victim that he has been fully released from captivity is consistent with *Brown's* holding that "voluntary release" does not include rescue or escape. *Id.* at 273–74.

The court of appeals also discussed the specific facts of this case, applied them properly in light of *Brown's* definition of voluntary release, and correctly determined that there was sufficient evidence to support "the trial court's conclusion that [appellant]'s actions did not constitute 'voluntary release' to trigger mitigation of [appellant]'s punishment for aggravated kidnapping." *Ballard*, 161 S.W.3d at 276–77. The record, which includes testimony from both the complainant and appellant reflecting that the complainant did not actually extricate herself until police directly intervened, supports that holding. Further, even if the complainant had chosen to drive away from the bank or grocery without appellant, her actions would have constituted an escape, another contra-indication of voluntary release.

We cannot conclude that the court of appeals erred in its interpretation of "vol-

untary release." Accordingly, we overrule appellant's sole ground for review. The judgment of the court of appeals is therefore affirmed.

COCHRAN, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion, joined by MEYERS and HOLCOMB, JJ.

COCHRAN, J., filed a concurring opinion.

I join the majority opinion. I add these comments only to emphasize that this appeal involves the legal and factual sufficiency of the evidence to support the trial court's rejection of appellant's affirmative defense to aggravated kidnapping of voluntary release in a safe place.[1] I agree with the Court of Appeals that, although "the evidence does reveal a reduction in Ballard's control over Lambeth," it does not reveal

> a voluntary release of Lambeth. While there is conflicting evidence on the matter—and Lambeth's testimony is not entirely clear on whether she felt free to leave—what is clear is that the trial court, acting as finder of fact in the face of conflicting evidence, was authorized to believe or disbelieve any portion of the evidence.[2]

The trial judge in this case was able to see Ms. Lambeth for himself, gauge her appearance, demeanor, and any nonverbal interactions between her and her former boyfriend during her testimony. Neither we nor the court of appeals were present during this testimony, nor can we adequately assess the credibility of Ms. Lambeth's in-court testimony.

As the court of appeals's opinion sets out the evidence, appellant and Ms. Lambeth clearly had a "troubled" relationship. They "share a child from their prior relationship," and appellant married another woman, but he continued to be very jealous of Ms. Lambeth's possible relationships with other men.[3] On prior occasions, he had accessed her e-mail, broken into her home, assaulted her, and threatened to kill her if she had another boyfriend.[4] It is undisputed that appellant kidnapped Ms. Lambeth at gunpoint from a college campus, and that she went with him because she did not want him to kill her.[5]

Given the nature of this relationship and of appellant's manner of kidnapping and sexually using Ms. Lambeth, I agree that the trial judge's conclusion that appellant failed to prove, by a preponderance of the evidence, that he voluntarily released Ms. Lambeth in a safe place is supported by the evidence and reasonable inferences from that evidence. That a different factfinder might well have concluded that Lambeth's testimony, including her statement, "I didn't leave because I just got back in the groove that I was used to[,]" supported an inference that Ballard had voluntarily released her in a safe place when he left her alone in the car is of no moment.

KELLER, P.J., filed a dissenting opinion in which MEYERS, and HOLCOMB, JJ., joined.

Appellant kidnapped his ex-girlfriend at gunpoint and took her to his home. Once there, he showed her that the gun was not

---

1.  Tex. Penal Code § 20.04(d).

2.  *Ballard v. State,* 161 S.W.3d 269, 277 (Tex. App.-Texarkana 2005).

3.  *Id.* at 274.

4.  *Id.*

5.  *Id.*

loaded, and they had consensual sex. A few hours later she and appellant drove together in her car to the bank and to the grocery store, where he left her alone in the parking lot while he went inside. The basic question in this case is whether this constituted a voluntary release in a safe place. Our past attempts to explain the meaning of that phrase have worked fairly well for the particular facts presented to us in particular cases, but we do not seem to have been very successful at articulating a universal rule to guide litigants and judges. The Court of Appeals carefully analyzed the issue here with reference to our prior holdings, but I do not believe that our prior holdings are adequate to deal with the facts in this case.

The Court of Appeals related the following regarding the victim Lambeth's testimony about the situation at the bank:

At the bank, she thought Ballard was no longer a threat and that she could have escaped. Rather than being afraid of Ballard, she felt depressed and upset. . . . She no longer feared that Ballard would catch her if she left and explained it was her decision to stay: "I could leave if I wanted to, but I didn't want to leave him there." She attributes her remaining in the truck to her own feelings. She did not leave at that point, she said, "[b]ecause [she] wouldn't do that to him, [she] wouldn't leave him stranded." At that point, "everything was back to normal." To demonstrate when Lambeth felt she was out of danger and free to go, she testified to the following: I could have left him, you know. I didn't have to take him to town, I could have left in the car then, I just didn't. I just felt—I didn't feel he was a threat to me at that point and I knew he wouldn't harm me after that. I pretty much knew he wasn't going to

harm me after we talked a little while in the car on the way to his house.[1]

Lambeth also said, however, "I didn't leave because I just got back in the groove that I was used to." The Court of Appeals found this statement to be ambiguous, meaning either that Lambeth remained with appellant willingly or that she had acquiesced to his control and the unhealthy dynamics of their prior relationship. The court considered this to be evidence that, even though appellant no longer had a gun with him, the elements of fear and control played a part in Lambeth's decision to remain in the car while appellant went into the store and the bank.

The State argues that appellant failed in his burden because there is no evidence that he overtly communicated to Lambeth that she was free to leave. While some courts of appeals have articulated this "overt communication" requirement, we have not. I do not think that overt communication of intent to release is necessarily required in every case. Here, Lambeth said that she no longer feared that he would catch her if she left and she thought she was free to leave, and in fact there is no evidence to the contrary regarding the time during which she was left alone in her car. She could have just driven away.

The State also argues that, given the emotional, psychological and violent history of appellant and his victim, Lambeth was not fully released from captivity. It is true that Lambeth had every reason to fear appellant and to believe that if she left, he would find her. He had beaten her before, and he had threatened to kill her. But if a psychological hold on a person is considered to be pertinent to the question of release, I have to wonder how a kidnapper who knows his victim and knows where she lives can ever release her in a

1. *Ballard v. State,* 161 S.W.3d 269, 275 (Tex. App.-Texarkana 2005).

safe place. Even if we assume that the "groove" the victim returned to was an attitude of fear rather than an emotional attachment, I do not believe that, for purposes of the kidnapping statute, a release that would otherwise be considered "release in a safe place" is negated by that kind of hold. And in this case, of course, the evidence of a psychological hold was, at the very best, ambiguous.

The Court's opinion says that, even if the victim had chosen to drive away from the bank or grocery store without appellant, her actions would have constituted an escape. I disagree. At that point, by her own testimony, she was in her own car and "free to go." The only thing conceivably left to keep her there was the "psychological hold," which she couldn't have escaped from by driving off anyway.

I respectfully dissent.