In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00098-CR


______________________________




EDDIE CHARLES REED, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 04F0318-202




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Eddie Charles Reed was convicted of indecency with a child as an habitual offender and
sentenced to life imprisonment. He appeals from that conviction and sentence.

 Under the testimony given, Reed had been living with his girlfriend, Brenda Zachary, for
about three and one-half years. 

 Zachary testified that she entered a bedroom of the house where Reed and Zachary's six-year-old granddaughter were located and discovered the granddaughter standing about three feet in front
of Reed. Reed's pants were unzipped; he was holding his penis (in a state of erection) in his hand.
Zachary testified that Reed was instructing the granddaughter to come closer to him and perform
fellatio on him. The jury found Reed guilty.

 At the punishment phase, evidence was introduced of Reed's two prior felony convictions
and the jury responded by assessing life imprisonment.

 Reed raises three points of error: 

 (1) he complains that the court failed to allow him to impeach the testimony of Zachary
regarding the chronology of certain events by the use of her statement to the police; 

 (2) he takes the position that it was error for the trial court to refuse to allow him to testify
that Reed had mistakenly previously entered a plea of guilty to a prior felony, believing he was
pleading, instead, to a state-jail felony; and

 (3) he alleges that the evidence was factually insufficient to sustain his conviction.

ABILITY TO IMPEACH USING PRIOR INCONSISTENT STATEMENTS

 As to the first issue, Reed believed that the point in time at which he began to weep and
threaten suicide was vitally important. Initially, Zachary testified that Reed exhibited this conduct
upon having been confronted with his conduct with Zachary's granddaughter. Reed tried first to
question her about her prior statement to police that Reed had cried and made his threat of suicide
after she had told him that she was throwing him out of her house (as opposed to when he was
discovered with his hardened penis in his hand). Reed explained that he believed it vitally important
to demonstrate that he was not evidencing distress because of remorse over his actions with the child
but, rather, because his relationship with Zachary was coming to an end. It is not necessary to
engage in an analysis of whether the initial ruling of the court was correct in determining that cross-examination of Zachary was proper or not because--after an extended discussion regarding the issue
outside the presence of the jury--Zachary changed her testimony to reflect that Reed began to weep
and threaten suicide only after Zachary had told him to clear his things out of her house. After the
change in her rendition of the sequence of events, Reed's counsel, apparently satisfied, indicated his
satisfaction by stating, "Okay. We've clarified that issue." Therefore, if there was any error in the
initial ruling, it was cured by the fact that Reed was allowed to question Zachary again and, this time,
the chronology of the actions as stated in her trial testimony completely coincided with the time
frames set out in the police statement. Accordingly, if error existed, the error was cured.


EVIDENCE OF MISTAKE IN PREVIOUS GUILTY PLEA TO FELONY

 Reed testified that, although he acknowledged that he had been convicted of the felony
offense of burglary of a habitation in 1979, he also took the position that he had intended to enter
a plea in 1997 (actually 1998) to a state-jail felony offense, not to the second-degree felony of which
he was actually convicted. Immediately after Reed announced that it was his desire to provide
testimony as to his intentions in 1998, the State was granted an oral motion in limine which barred
Reed from making reference to the 1998 conviction as a state-jail offense, rather than a
second-degree felony. (1)

 Reed relies on Parr v. State, 557 S.W.2d 99 (Tex. Crim. App. 1977), for the proposition that
a defendant has the ability to explain the details of the prior convictions. However, Parr has no
application to the facts of this case. In Parr, the defendant took the stand and admitted to two prior
convictions for the possession of illicit drugs; on cross-examination, the State went much farther
than it should have gone. During questioning which would ordinarily be characterized as badgering,
the State pushed its point too far, asking the defendant, "Oh, you weren't [guilty]? Why did you
plead guilty then?" Id. at 101. When, on redirect, Parr's attorney attempted to expand on the answer
to this question, the State objected, saying, "Why he pled guilty is of no concern to this jury. The
record speaks for itself, we have had hearings on this." Id. The court sustained the objection, barring
any further inquiry into the issue. Id. The court observed that once the State had opened the inquiry
into why Parr had pled guilty, Parr was then entitled to further explore the issue; in other words, the
actions of the State had permitted a line of inquiry which would have otherwise not been allowed.

 In this case, however, the State opened no door to allow Reed to enter into that area of
inquiry. Rather, it simply introduced evidence of the fact of the convictions and used a fingerprint
expert to tie those convictions to Reed. It is plain that Reed was unilaterally attempting to revisit
one of his prior convictions and show that it was not truly what the record showed that it was. In
other words, when Reed was attempting to testify that, under the evidence which existed that he
really should not have been convicted of the crime of burglary of a habitation, he was attempting a
collateral attack on a final judgment. Although a prior conviction that was alleged in a later offense
may be collaterally attacked if it is void or if it is tainted by a constitutional defect, it may not be
attacked for an alleged insufficiency of the evidence or irregularities in the judgment or sentence. 
Galloway v. State, 578 S.W.2d 142, 143 (Tex. Crim. App. [Panel Op.] 1979); In re Altschul, 207
S.W.3d 427 (Tex. App.--Waco 2006, pet. filed). Reed was attempting to testify about the facts upon
which his conviction was based and the conclusions which he drew from those facts as to his
culpability in the crimes with which he was charged. These do not rise to the height of a void
conviction or one which is tainted by a constitutional defect. 

 Further, the subjective evidence of what was in Reed's mind regarding the gravity of the
offense to which he had pleaded guilty is not relevant to the fact at hand. The fact is that there was
evidence of two felony convictions. Recitations, such as formal judgments, are binding in the
absence of direct proof of their falsity. Breazeale v. State, 683 S.W.2d 446, 450 (Tex. Crim. App.
1984) (op. on reh'g); Rogers v. State, 792 S.W.2d 841, 844 (Tex. App.--Houston [1st Dist.] 1990,
no pet.); see Battle v. State, 989 S.W.2d 840 (Tex. App.--Texarkana 1999, no pet.). That was
sufficient to meet the burden of the enhancement required in Section 12.42 of the Texas Penal Code. 
See Tex. Penal Code Ann. § 12.42 (Vernon Supp. 2006).

 Reed's contention of error is without merit.

CLAIM OF FACTUAL INSUFFICIENCY

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the fact-finder's verdict is clearly wrong
and manifestly unjust or whether the great weight and preponderance of the evidence is contrary to
the verdict. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006); see also Johnson v.
State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim.
App. 1996). It is the fact-finder's role to judge the credibility of the witnesses and the weight to be
given their testimony, and the fact-finder "may resolve or reconcile conflicts in the testimony,
accepting or rejecting such portions thereof as it sees fit." Banks v. State, 510 S.W.2d 592, 595 (Tex.
Crim. App. 1974); see also Scott v. State, 814 S.W.2d 517, 518-19 (Tex. App.--Houston [14th
Dist.] 1991, pet. ref'd). When evidence both supports and conflicts with the verdict, we must assume
that the fact-finder resolved the conflict in favor of the verdict. Turro v. State, 867 S.W.2d 43, 47
(Tex. Crim. App. 1993); see also Marshall v. State, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)
("our factual-sufficiency jurisprudence still requires an appellate court to afford 'due deference' to
the jury's determinations"). The appellate court's role is not to "find" facts; rather, it is to determine
whether the verdict is against the great weight of the evidence presented at trial so as to be clearly
wrong and unjust. Ballard v. State, 161 S.W.3d 269, 277 (Tex. App.--Texarkana 2005), aff'd, 193
S.W.3d 916 (Tex. Crim. App. 2006) (Cochran, J., concurring) ("[T]rial court, acting as finder of fact
in the face of conflicting evidence, was authorized to believe or disbelieve any portion of the
evidence.").

 In this case, at the guilt/innocence stage of the trial, there was evidence that Reed was
discovered by Zachary displaying his erect penis to his girlfriend's granddaughter and had asked her
to take his penis in her mouth. Clara Howard provided unobjected-to testimony that the child told
her that Reed had displayed his penis to the child and requested that "she suck on it." During the
ensuing minutes, Reed had begun to cry and had taken a knife, threatening suicide. Zachary's
granddaughter testified that Reed had entered the room in which she was located (on a bed, watching
television), pulled down his pants, and, while close to her, began rubbing his penis.

 Reed countered that he entered the house and announced that he was going to change clothes;
that he went into the bathroom and when he exited the bathroom (with his penis outside his pants)
that he turned the corner and ran into Zachary's granddaughter, who was standing there. At that
moment, Zachary entered the room and made the wrong assumptions from the scene. He testified
that he had become upset, cried, and threatened suicide because Zachary had told him to gather his
things and leave her house--not because he was feeling any guilt or remorse over having supposedly
been caught displaying his penis to Zachary's granddaughter.

 The jury had the option of believing either the rendition of the occurrences from Zachary, her
granddaughter, and Howard or it could believe Reed's version; it could not believe both. It chose
to disbelieve Reed. There was ample evidence to sustain a conviction beyond a reasonable doubt. 
 At the punishment phase, Reed admitted to one of the enhancement felonies and disputed the
other. The State presented penitentiary packets to evidence the prior convictions and the testimony
of a fingerprint expert to link those convictions to Reed. The State met its burden of proof on the
punishment phase.

 The point of error concerning factual insufficiency is overruled.

 We affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: April 5, 2007

Date Decided: April 25, 2007


Do Not Publish

1. Reed's attempt to insulate himself from the consequences of past actions was revealed
elsewhere in the trial. He had previously attempted to testify that in 1981, his revocation of
probation for the previous felony had come about as a result of false testimony regarding a charge
of indecency with a child. Also during the guilt/innocence phase, he had testified that "[T]hat really
shouldn't have been burglary of a habitation anyway . . . . It should have been hauling stolen
property instead of burglary, but it turned into burglary of habitation, which it shouldn't have been
burglary of a habitation."


ption Locked="false" Priority="63" SemiHidden="false"
 UnhideWhenUsed="false" Name="Medium Shading 1 Accent 6"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00222-CR

                                                ______________________________

 

 

                       ALFRED MORELAND RODGERS, JR.,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                         On Appeal from the 6th Judicial District Court

                                                             Lamar County, Texas

                                                            Trial
Court No. 23615

 

                                                            
                                      

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                      MEMORANDUM OPINION

 

            Alfred
Moreland Rodgers, Jr., appeals his conviction for possession of less than one
gram of methamphetamine in a drug-free zone, and sentence of seven years
imprisonment.  His sole point of error on
appeal complains that his open plea of guilty was involuntary because the trial
court allegedly failed to accurately admonish him with regard to the applicable
punishment range.[1]  We affirm the trial courts judgment because
this issue has not been preserved for our review.  

            Simultaneously
with his open plea of guilty to the charge mentioned above, Rodgers also
entered an open plea of guilty for possession of less than one gram of
methamphetamine in a drug-free zone and for possession of methamphetamine in an
amount of four grams or more but less than 200 grams.  (This second matter is the subject of another
appeal, being cause number 06-10-00223-CR on the docket of this Court.)  The trial court announced the punishment for
both of these crimes and ordered that he serve both sentences concurrently. 

            Rodgers
does not complain that he was unaware of the maximum and minimum years of
imprisonment at the time of his guilty plea to both of these charges.  In fact, he acknowledges that he understood
the range of punishment, pursuant to the accurate written plea
admonishments.  

            Rather,
the complaint regards the pronouncement (and the written judgment) that the
sentences for these two convictions be served concurrently, rather than
consecutively.  Rodgers points to Section
481.134(h) of the Texas Health and Safety Code, which provides that the
sentence for possession of drugs within a drug-free zone may not run
concurrently with punishment for a conviction under any other criminal
statute.  Thus, Rodgers claims that the
trial court was required to admonish him that the two charges can not [sic] be
run concurrently and must therefore be served consecutively.[2]  At the same time, Rodgers complains that
Section 481.134 is in derogation of the generally recognized provision of
Texas Penal Code §3.03 wherein multiple offenses of the same criminal episode
prosecuted in a single criminal action are required to run concurrently.  In other words, Rodgers complains that the
sentences should run concurrently, even though they already run concurrently. 

            In
any event, [a]s a prerequisite to presenting a complaint for appellate review,
the record must show that:  (1) the
complaint was made to the trial court by a timely request, objection, or motion
. . . .  Tex. R. App. P. 33.1(a)(1).  We have previously held that challenges to
the voluntariness of a plea must be raised before the trial court to preserve
the complaint for review on appeal.  Sims v. State, 326 S.W.3d 707, 713 (Tex.
App.Texarkana 2010, pet. struck) (citing Mendez
v. State, 138 S.W.3d 334, 339 (Tex. Crim. App. 2004)).  While Rodgers filed a motion for new trial,
he failed to raise these issues with the trial court.  Thus, any complaint with respect to
voluntariness of his plea has not been preserved. 

            We
affirm the trial courts judgment. 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          August
15, 2011

Date Decided:             August
17, 2011

 

Do Not Publish











[1]In
cause number 06-10-00223-CR, Rodgers appealed a conviction of possession of
methamphetamine in an amount of four grams or more but less than 200 grams, and
sentence of twelve years imprisonment on the same grounds.  





[2]The
trial court was not required to admonish Rodgers that the two sentences would
run consecutively for reasons other than the fact that consecutive sentences
were not imposed.  In Williams v. State, 253 S.W.3d 673, 678
(Tex. Crim. App. 2008), the Texas Court of Criminal Appeals wrote:  It is apparent from the language of this
statute that a conviction for an offense listed anywhere within § 481.134
cannot run concurrently with a conviction for an offense under any other
criminal statute.  Just reading the
statute under the auspices of common usage and grammar, any other criminal
statute means a criminal statute not listed within § 481.134.  Id.  Here, as in Williams, Rodgers conviction in cause number 06-10-00223-CR was
for violation of Section 481.115(d) of the Texas Health and Safety Code, a
statute specifically listed in Section 481.134(c).  Tex.
Health & Safety Code Ann. §§ 481.115(d), 481.134(c) (West 2010).  As in Williams,
Rodgers punishment in this case was
increased for a conviction listed under Section 481.134(c), but because all
of [Rodgers] convictions were for offenses listed under § 481.134(c), the
trial court properly ordered that they be served concurrently.  Williams,
253 S.W.3d at 678.