# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00474-CR

**Antonio Morales aka Modesto Vences Garcia, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. D-1-DC-08-300366, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Antonio Morales guilty of aggravated kidnapping and assessed his punishment at fifty years' imprisonment. *See* Tex. Penal Code Ann. § 20.04 (West 2003). Appellant contends that the trial court should have suppressed statements he made to the police and that the jury's finding that he did not release the victim of the kidnapping in a safe place was against the great weight and preponderance of the evidence. We overrule these contentions and affirm the conviction.

On the morning of February 7, 2008, Lizbeth Suarez was preparing to drive her ten-year-old daughter, Z.J., and her five-year-old son, A.J., to school when a gray Volkswagen stopped behind her Jeep Cherokee, blocking the driveway. There were four young men in the Volkswagen, two of whom jumped out and ran to the Cherokee. One of the men seized A.J. and carried him to the Volkswagen. As Lizbeth and Z.J. screamed and tried to stop the car, the

Volkswagen sped away. At about 8:00 p.m. that night, A.J. was found sitting in the stairwell of an apartment complex several miles from his home, unharmed.

The evidence reflects that the kidnapping was organized by appellant to collect money appellant believed he was owed by A.J.'s father, who is appellant's cousin.[1] To commit the crime, appellant recruited M.F., the sixteen-year-old son of Maria Moran, the woman with whom appellant was then living. On three occasions prior to the kidnapping, appellant drove M.F. to his cousin's neighborhood in Moran's blue Oldsmobile Alero to observe the family routine. They were careful to stop several houses away so they would not be recognized by appellant's relatives. This suspicious behavior drew the interest of several other residents of the street, however, who wrote down the license plate number of the car and later reported what they had seen to the police.

The kidnapping was carried out by M.F. and three of his friends, Esau Rodriguez, Hector Hernandez, and A.S., another juvenile. The Volkswagen used in the kidnapping had been borrowed by appellant from another relative, who had no idea what appellant planned to do with it. After seizing A.J., M.F. and the others drove to the apartment appellant shared with Moran. Blindfolded so he would not see appellant or family photographs, A.J. was taken to a bedroom where he was kept for several hours. That afternoon, A.J. was moved to another location by a man who was never identified. This man later drove A.J. to the apartment complex where he was found.

Aggravated kidnapping is reduced from a first degree to a second degree felony if, at the punishment stage, the defendant proves by a preponderance of the evidence that he voluntarily released the victim in a safe place. *Id*. § 20.04(d). The trial court submitted this question to the jury,

---

[1] It is unclear from the record if a ransom demand was made. No ransom was paid.

which found that appellant did not release A.J. in a safe place. In his first issue, appellant contends that the jury's finding is contrary to the great weight and preponderance of the evidence. *See Meraz v. State*, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990). In effect, appellant makes a factual sufficiency challenge under which we may set aside the jury's finding only if, considering all the relevant evidence in a neutral light, the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Ballard v. State*, 161 S.W.3d 269, 271 (Tex. App.—Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006).[2]

There is no dispute that A.J. was voluntarily released within the meaning of section 20.04(d). The issue is whether he was released in a safe place. Among the factors to consider in making this determination are the remoteness of the location, the proximity of persons who could aid or assist, the time of day, the climatic conditions, the condition of the victim, the character of the location or surrounding neighborhood, and the victim's familiarity with the location or neighborhood. *Harrell v. State*, 65 S.W.3d 768, 772-73 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

---

[2] Although the court of criminal appeals has not directly addressed the issue, most courts of appeals also permit defendants to challenge the legal sufficiency of the evidence supporting a jury's adverse answer to an issue on which the defendant has the burden of proof. *See Ballard v. State*, 161 S.W.3d 269, 271-72 (Tex. App.—Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006); *Howard v. State*, 145 S.W.3d 327, 330-32 (Tex. App.—Fort Worth 2004, no pet.). In such a review, the appellate court first examines the record for evidence supporting the jury's finding, ignoring all evidence to the contrary. *Ballard*, 161 S.W.3d at 272; *Howard*, 145 S.W.3d at 334. If there is no evidence to support the finding, the court then examines the entire record to see if the defendant satisfied his burden of proof as a matter of law. *Ballard*, 161 S.W.3d at 272; *Howard*, 145 S.W.3d at 334.

A.J. was released between 7:00 and 8:00 p.m. on a February night. There was testimony that it was dark, and it is reasonable to infer that it was cold. The man who released A.J. told him that his aunt lived in one of the apartments, but this was not true. A.J. testified that he knew no one at the complex and had no idea where he was. He said that he was scared and "thought that I was going to have to stay there forever." Not knowing what else to do, A.J. sat down in the dimly lit stairwell and waited. He had not been there long when he was discovered by Ciriolo Mora, a resident of the complex who was taking out his garbage. A.J. told Mora what had happened to him, and Mora promptly called the police. Mora testified that in his opinion, the complex was not a safe place for a five-year-old to be alone outside after dark. Two police officers testified that the apartment complex and the surrounding neighborhood were considered high-crime areas.[3]

Appellant stresses that the apartment complex was not a remote location and that the residents of the complex were available to render aid to the boy. Appellant also points to Mora's testimony that children live at the apartment complex and often play outside. But it is one thing for children living in the apartment complex to play there; it is another for a five-year-old boy to be left there alone and lost after dark. A.J.'s good fortune in being found by Mora and safely returned to his family does not mean that the apartment complex was a safe place for the boy under the circumstances. Considering all the evidence, the jury's finding that A.J. was not released in a safe place was not against the great weight of the evidence or manifestly unjust. Issue one is overruled.

---

[3] Although appellant does not make a legal sufficiency challenge, we note that the evidence summarized in this paragraph supports a finding that the apartment complex where A.J. was released was not a safe place, and therefore the evidence is legally sufficient to support the jury's adverse finding on the section 20.04(d) issue. *See Ballard*, 161 S.W.3d at 276; *Howard*, 145 S.W.3d at 335-36.

4

Appellant was first questioned by the police on the afternoon of February 7, after appellant and Moran were stopped in Moran's Alero by police on the lookout for the suspicious blue car seen near the location of the kidnapping. They agreed to go to the police station, where each gave a statement denying any knowledge of the kidnapping. Appellant and Moran went home after giving these statements.

The next day, after A.J. had been found, police officers went to the apartment appellant shared with Moran to speak to them again. Questioned separately from Moran, appellant made statements that were evasive, contradictory, and inconsistent with Moran's statements. Searching the apartment with consent, the officers also noticed that the bedroom fit A.J.'s description of the room in which he had been held. Detective Richard Faithful, the lead investigator, asked appellant if he would be willing to return voluntarily to the police station for further questioning. Appellant agreed to do so. Detective William White, who was also present, confirmed Faithful's testimony that appellant was not under arrest and voluntarily returned to the police station.

Appellant was interviewed at the station by Detective Rogelio Sanchez, who is fluent in Spanish. The interview began at 7:20 p.m. Sanchez told appellant that he was not under arrest, and appellant said that he understood this. Appellant also acknowledged coming to the police station voluntarily. Although Sanchez did not consider appellant to be in custody, he advised appellant of his rights under *Miranda* and article 38.22. *See Miranda v. Arizona*, 384 U.S. 486 (1966); Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). Sanchez then asked appellant if he was willing to talk to him. Appellant answered, "No." Sanchez repeated, "No?" and appellant replied, "Well, I have nothing to talk [sic] anymore." Referring to the previous day's statement, appellant said "I already

told there [them] about everything that happened, right?" Sanchez testified that he did not understand appellant to be saying that he did not want to talk, but only that he had nothing to add to what he had already told the police. Sanchez told appellant, "[Y]ou are telling me that you have already said everything . . . and you are not involved in any way . . . and you don't want to talk to us." Appellant responded, "No. Why? Because, because I don't know anything." Sanchez then said, "Because, I can only tell you, that is because I have questions. . . . But if you don't want to hear them, that's alright. . . . You can go." Appellant told Sanchez that he was willing to go over the statements he had previously given: "[I]f you like I can give them, but I can't tell you I know more things, right? I can tell you about the same thing as yesterday." With this, Sanchez and a second officer began to question appellant after again receiving appellant's assurance that he understood that he was not under arrest and could leave at any time. Throughout this questioning, appellant insisted that he had nothing to do with the kidnapping. Faithful, who was monitoring the questioning, testified that appellant would have been allowed to go home had police not discovered a warrant for his arrest under a different name for an unrelated felony offense. The questioning ended with appellant's arrest on the warrant at 1:20 a.m. Appellant was formally charged with the kidnapping on February 9, after M.F. confessed to the police and implicated appellant.

A video recording and a written transcription/translation of appellant's February 8 questioning by Sanchez were introduced in evidence over appellant's objection. Appellant does not deny that he voluntarily returned to the police station, but he urges in his second issue that the interrogation became custodial at some unspecified point. Appellant contends that his

6

February 8 statements should have been suppressed because he was in custody and had invoked his right to silence.

A person is in custody during an interrogation if, under all the circumstances, an objectively reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). The court of criminal appeals has identified four general situations that may constitute custody for the purpose of *Miranda*: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect that he cannot leave; (3) officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) when there is probable cause to arrest and officers do not tell the suspect that he is free to leave. *Id*. at 255.

Appellant was not physically restrained during his questioning on February 8, and he was repeatedly told that he was free to leave the police station at any time. Appellant challenges Faithful's testimony that the police did not have probable cause to arrest him for the kidnapping, but appellant cites no evidence that the police ever suggested to him that he was not free to leave. The strongest statements the officers made during the questioning were when they told appellant that he was not telling the truth, an assertion that appellant vigorously denied. The record as a whole supports the trial court's conclusion that appellant was not in custody at the police station until he was arrested on the outstanding felony warrant. This resolves appellant's contention that the police did not honor his invocation of his right to silence. *See Estrada v. State*, No. AP-75,634, 2010 Tex. Crim. App. LEXIS 722, at *49 (Tex. Crim. App. June 16, 2010). Issue two is overruled.

7

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 3, 2010

Do Not Publish