PD-0522-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/6/2015 12:00:00 AM
Accepted 7/7/2015 3:04:25 PM
ABEL ACOSTA
CLERK

**NO. PD-0522-15**

PETITION FOR WRIT OF DISCRETIONARY REVIEW

IN THE COURT OF CRIMINAL APPEALS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JOHN CHRISTOPHER DOMINGUEZ, Petitioner

v.

THE STATE OF TEXAS, Respondent

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ON PETITION FROM THE

HONORABLE FOURTH COURT OF APPEALS

OF BEXAR COUNTY, TEXAS

NO. 04-13-00789-CR

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TRIAL COURT CAUSE NO. 2013-CR-3592

226th JUDICIAL DISTRICT COURT , BEXAR COUNTY, TEXAS

---

***REASON FOR REVIEW:***
*The Justices of the Court of Appeals have disagreed on a material*
*question of law necessary to the court's decision. [T.R.A.P. 66.3 (e)]*

FILED IN
COURT OF CRIMINAL APPEALS

July 7, 2015

ABEL ACOSTA, CLERK

PATRICK B. MONTGOMERY
Petitioner's Attorney
111 SOLEDAD, SUITE 300
SAN ANTONIO, TX 78205
Office: (210) 225-8940   Fax (978)285-4664
**PatMontgomery@GMail.com**
STATE BAR NO. 14295350

# TABLE OF CONTENTS

TABLE OF CONTENTS....................................................................................................i

LIST OF PARTIES.....................................................................................................ii

TABLE OF AUTHORITIES........................................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT.....................................................1

STATEMENT OF PROCEDURAL HISTORY..............................................................1

STATEMENT OF THE CASE......................................................................................1

FACTUAL HISTORY..................................................................................................1


GROUND FOR REVIEW:

**The Court of Appeals' majority panel opinion incorrectly decided that in a kidnapping case, the affirmative defense of release in a safe place can be determined subjectively from the perspective of the involved parties, instead of objectively deciding the safety of the place of release.**

**…...................................................................................3**


SUMMARY.................................................................................................................5


PRAYER......................................................................................................................5


CERTIFICATE OF SERVICE AND WORD COUNT COMPLIANCE........................................6


APPENDIX.........................................................................................................appendix

# LIST OF PARTIES

JOHN CHRISTOPHER DOMINGUEZ was the trial Defendant below.


Mr. DOMINGUEZ is now the Petitioner in the instant Petition. PAT MONTGOMERY represents Petitioner in the instant appeal. JAMES S. WHEAT represented the Petitioner at trial.


The State of Texas is the Appellee. Bexar County District Attorney SUSAN D. REED represented the State of Texas at the trial court. She appeared by and through her Assistant District Attorneys MICHEAL DE LEON and CATHERINE WILSON.


The Complainant in this case was sixteen-year-old D.P.


Former Bexar County District Attorney SUSAN D. REED originally represented the Appellee State of Texas in the instant appeal. Bexar County District Attorney Nico LaHood now representes the State of Texas, through his designated assistant LAURA DURBIN.


Honorable Judges SID HARLE and ANGUS McGINTY presided over the trial court proceedings.

PATRICK B. MONTGOMERY  
111 SOLEDAD, SUITE 300  
SAN ANTONIO, TX 78205  
(210)225-8940 Fx (978)285-4664  
PatMontgomery@Gmail.com  
STATE BAR NO. 14295350

# TABLE OF AUTHORITIES

**CASES**:

*Butcher v. State,* ---S.W.3d ---, No. PD-1662-13, , (Tex. Crim. App. Jan. 28, 2015).................4, 5

*Harrell v. State*, 65 S.W.3d 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd)....................4

*Woods v. State,* 301 S.W.3d 327(Tex. App.—Houston [14th Dist.] 2009, no pet.).........................4

**TEXAS STATUTE:**

TEX.PENAL CODE ANN. § 12.33(a).......................................................................................2, 4

iii

**STATEMENT REGARDING ORAL ARGUMENT.**

Petitioner asserts that if discretionary review is granted, then this Honorable Court of Criminal Appeals should grant oral argument in the instant case, because argument will be useful to the Court's further developing a guiding precedent regarding the affirmative defense of safe release of the victim in kidnapping cases.

**STATEMENT OF PROCEDURAL HISTORY.**

The Opinion of the Court of Appeals was handed down March 25, 2015. No motion for rehearing was filed. Two extensions of time were requested and granted for the Petitioner to to file this Petition.

**STATEMENT OF THE CASE**

This Petition follows an appeal from a criminal case that was tried to a jury. The Petitioner was convicted of Aggravated Kidnapping and Sexual Assault of a Child. Punishment was assessed by the trial court at sixty years confinement for the Aggravated Kidnapping, and twenty years confinement for the Sexual Assault of a Child, to be concurrently served.

**FACTUAL HISTORY**

The factual history of the case was presented to the jury through the testimony of five witnesses, each called by the state. The Appellant did not testify at trial on the merits, nor did he testify on punishment. The Appellant presented no case at trial.

For the purposes of this Petition, the pertinent facts relate only to the Petitioner's release of the complainant subsequent to the kidnapping offense, and not to the circumstances leading to and surrounding the offense before the Petitioner's release of the Complainant.

-1-

The Petitioner was convicted of kidnapping the then sixteen-year-old Complainant D. P., and taking her to the Sahara Motel on Culebra Road in San Antonio, Bexar County, Texas, where he sexually assaulted her.

Petitioner contended on direct appeal that the trial court erred by sentencing him to a term of sixty years' confinement for kidnapping, in accordance with a first-degree felony.

Petitioner's appeal averred that the maximum term of punishment should have been that of a second-degree felony, which carries a maximum confinement of twenty years pursuant to TEX.PENAL CODE ANN. §12.33(a) (West 2011), because a preponderance of the evidence showed that he voluntarily released D.P. in a safe place.

The evidence at trial showed that the Petitioner after the kidnapping, the Petitioner voluntarily left the Complainant with her friend in a motel room at the Sahara Motel on Culebra Road in San Antonio, Texas. He did not make any attempt to harm her or to kill her in order to prevent her from an escape. He simply left the room on his own volition, thereby informing her that he was releasing her from her captivity.

The motel where she was released is located on a busy urban business thoroughfare in a major city. There was a working telephone in the room that she used. The complainant was not left in any type of restraints such as ropes, chains, handcuffs, or a cage. She was uninjured.

The complainant was not locked inside the motel room, and indeed freely left to go to an open nearby Pizza Hut. She was informed by the Petitioner that he was leaving. There was absolutely nothing dangerous or unsafe about the motel room; it was just a typical motel room.

The trial court viewed multiple photographs of the Sahara motel. The trial court viewed a map of the area, demonstrating the location of the motel. The photographs and maps of the business demonstrated that it was a safe place, as did the testimony presented at trial. There was

no evidence, not a scintilla, presented that the motel room was unsafe in any way.

Police officers assigned to the case did not aver during their testimony that the motel's location was in any way known to be dangerous. One officer returned to the location to take photographs. He provided testimony regarding the authentication of photographs and regarding obtaining records from the management, never averring that the location was known for any criminal activity.

The location where complainant was released was not remote. It was not a dangerous hour of the day. It was a warm January day and there was no inclement weather. The complainant was not incapacitated or intoxicated. The location was a public motel in a well built up neighborhood near a children's shelter, a shopping center, and a restaurant. The sixteen-year-old complainant was aware that she was at a motel in San Antonio, and she was able to telephonically direct her sister to come to get her.

## GROUND FOR REVIEW:

**The Court of Appeals' majority panel opinion incorrectly decided that in a kidnapping case, the affirmative defense of release in a safe place can be determined subjectively from the perspective of the involved parties, instead of objectively deciding the safety of the place of release.**

The majority panel opinion denied Petitioner's direct appeal. One dissenting panel justice stated, in opening her well-reasoned dissent:

> "The Legislature saw fit to mitigate the punishment in aggravated kidnappings where the defendant voluntarily releases his victim in a safe place. A victim is released when she realizes that she is freed from captivity. In this case, both the victim's testimony that the defendant was "gone" and her actions in telephoning her sister to pick her up and then leaving the motel clearly reflect her realization that she was freed from

**-3-**

captivity.  Because the majority completely ignores the victim's testimony and actions and instead erroneously views the evidence regarding "release" solely from the defendant's perspective, I respectfully dissent."

Petitioner proved at trial by a preponderance of the evidence that he performed an overt and affirmative act which "brought home" to his victim that she had been fully released from captivity. See *Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).  The trial evidence further showed that release occurred in a place and manner which realistically conveyed to D.P. that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available. See *Woods v. State*, 301 S.W.3d 327, 331 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The trial court's conclusion that there was not a preponderance of evidence presented at trial that the complainant was left in a safe place, served to defeat the legislative intent of the statute.   The legislative intent was to encourage kidnappers to leave their victims unharmed and in a safe place.  T

The legislature decided in enacting Section 20.04 (d) that kidnappers in such circumstances, as a matter of sound public policy, should not to be subject to the very same first degree felony range of punishment as they would be had they elected to commit murder against their victim.  The trial and appellate court should have followed the legislature's reasoning and intent in accordance with Section 20.04 (d).

While the Petitioner's direct appeal was pending, this Honorable Court of Criminal Appeals  decided *Butcher v. State*, ---S.W.3d ---, No. PD-1662-13, 2015 WL 359087, (Tex. Crim. App. Jan. 28, 2015).  *Butcher* addressed the same statute at issue here, the safe release affirmative defense.

**- 4-**

In *Butcher*, the Appellant abandoned a nine-year-old girl alone on a long, dark, desolate driveway to her condominium complex. It was the same location where he had abducted her from her school bus stop hours earlier. The *Butcher* complainant had no access to a telephone, her family was not home, and she was seven years younger than D.P. in this instant Petition.

**SUMMARY**

The lower court's dissent summarized it best: "The trial court's rejection of the requested affirmative defense should be overturned since, as explained herein, ***the evidence conclusively proves his affirmative defense*** and no reasonable factfinder was free to think otherwise," and "I believe the court's rejection of the affirmative defense was so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." [emphasis added]

**PRAYER**

Wherefore, premesis considered, your Petitioner prays that this Honorable Court of Criminal Appeals grant discretionary review, and that upon full briefing and argument of the case the Court reverse the trial court below and remand the case for resentencing.

Respectfully submitted,
/s/
Pat Montgomery
111 SOLEDAD, SUITE 300
SAN ANTONIO, TX 78205
Phone (210) 225-8940, Fax(978) 285-4664
PatMontgomery@Gmail.com
Petitioner's Attorney  TBN 1429535

# CERTIFICATE OF SERVICE AND WORD COUNT COMPLIANCE

Counsel certifies by his signature below that the word count is 1854, and that contemporaneously with the filing of this Petition, he has provided a copy of this Petition to:

1. The Bexar County District Attorney's Office through the e-filing system
2. The Office of the State Prosecuting Attorney through the e-filing system
3. The Petitioner John Christopher Dominguez, through U.S. Mail

Respectfully submitted,


Pat Montgomery
111 SOLEDAD, SUITE 300
SAN ANTONIO, TX 78205
Phone (210) 225-8940,  Fax(978) 285-4664
PatMontgomery@Gmail.com
STATE BAR NO. 14295350
Petitioner's Attorney



# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-13-00789-CR

John Christopher **DOMINGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR3592
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  March 25, 2015

AFFIRMED

Appellant John Christopher Dominguez appeals his convictions for aggravated kidnapping

and sexual assault of a child.  Because we conclude that the trial court properly admitted the

extraneous offense testimony and Dominguez failed to prove, by a preponderance of the evidence,

that he voluntarily released his kidnapping victim in a safe place, we affirm the trial court's

judgment.

**BACKGROUND**

Dominguez was indicted for eighteen counts of criminal conduct including aggravated kidnapping with intent to commit sexual assault, sexual assault, and sexual assault of a child, committed on nine different dates against two different complainants. The State waived three counts prior to trial. The trial court granted Dominguez's motion for severance, and the State elected to proceed on Counts I (aggravated kidnapping) and III (sexual assault of a child) of the indictment naming D.P. as the complainant. The case proceeded to trial on September 10, 2013.

At trial, the following evidence was presented. Dominguez and sixteen-year-old D.P. began corresponding through Facebook in late 2012. On January 18, 2013, D.P. agreed to let Dominguez pick up her and a friend, and together they all went to the mall. Two days later, Dominguez again picked up D.P. and the same friend from the post office near the friend's home on the south side of San Antonio.

Prior to Dominguez's arrival, D.P. sent Dominguez a message via Facebook saying, "I didn't dress up today, I'm just wearing my shorts and a sweater." After making at least one stop along the way, the three eventually ended up at the Sahara Motel. The girls went into the motel room while Dominguez retrieved a duffel bag from his car's trunk.

D.P. testified that her friend started to panic and that D.P. told her to go into the bathroom and lock the door behind her. Shortly thereafter, Dominguez sexually assaulted D.P. After the assault, D.P. went into the bathroom with her friend. Dominguez knocked on the door and told the girls that he was leaving and that he would return in a couple of hours. After Dominguez left, the girls remained in the bathroom during which time they "cried and fell asleep."

After approximately thirty minutes, the two girls emerged from the bathroom and used the telephone located in the motel room to call for a ride. D.P. eventually reached her sister. However, because D.P. was not sure where they were, her sister told her to look for the nearest intersection.

Unable to find anyone in the motel offices, D.P. and her friend ran to a nearby Pizza Hut where they again called D.P.'s sister who picked them up there twenty minutes later.

D.P. did not tell her sister about the assault.  However, three to four days later, D.P.'s friend's mother confronted D.P. about what happened at the motel. D.P. confessed that she had been sexually assaulted.

The jury found Dominguez guilty of both counts as charged in the indictment.  Dominguez elected to be punished by the trial court and a punishment hearing was held at a later date. The trial court sentenced Dominguez to sixty-years' confinement for the aggravated kidnapping and twenty-years' confinement for the sexual assault of a child, both sentences to run concurrently. Additionally, the trial court also revoked Dominguez's probation on a previous criminal matter.

On appeal, Dominguez complains that the trial court erred by admitting testimony regarding alleged extraneous offenses and by sentencing him to a term of sixty years' confinement for the aggravated kidnapping as a first-degree felony.

We first address the State's extraneous offense evidence.

**EXTRANEOUS OFFENSE EVIDENCE**

The evidence in question was the testimony from another witness claiming Dominguez engaged in sexual contact with her when she was underage.  B.F. testified that she and Dominguez had many sexual encounters when she was fifteen and sixteen years old.  Some of these encounters were captured on cell phone video.  B.F. acknowledged viewing several of these videos prior to her testimony.

The defense objected to B.F.'s testimony based on Texas Rules of Evidence 403 and 404. *See* TEX. R. EVID. 403, 404.  The State did not respond directly to the objections, but instead asserted the testimony was proffered pursuant to article 38.37, section 2 as character conformity

and propensity evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2014). The State did not respond directly to the defense objections.

### A. Standard of Review

"A trial court's ruling on the admissibility of extraneous offenses is reviewed under an abuse of discretion standard." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). "The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010).

### B. Arguments of the Parties

The State contends the proffered testimony is admissible pursuant to article 38.37, section 2, as character conformity and propensity evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

Dominguez counters that he was indicted before article 38.37 became effective and that the criminal "proceeding" in the instant case commenced with the return of the grand jury indictment on April 22, 2013, and thus article 38.37, Section 2(b) did not apply to any part of his prosecution, even though his trial began after September 1, 2013. Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 3, 2013 Tex. Gen. Laws 1167, 1168 ("The Act takes effect September 1, 2013.").

### C. Texas Code of Criminal Procedure article 38.37

Texas Code of Criminal Procedure article 38.37, section 2(b) provides that, notwithstanding Rules 404 and 405, "evidence that the defendant has committed a separate offense [i.e., sexual assault of a child] may be admitted in the trial . . . for any bearing [it] has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). This particular

section of article 38.37 became effective on September 1, 2013. The enactment paragraph pertaining to section 2 of article 38.37 provides:

> *The change in law made by this Act applies to the admissibility of evidence in a criminal proceeding that commences on or after the effective date of this Act.* The admissibility of evidence in a criminal proceeding that commences before the effective date of this Act is covered by the law in effect when the proceeding commenced, and the former law is continued in effect for that purpose.

Act of May 17, 2013, 83d Leg., R.S., ch. 387, § 2, 2013 Tex. Gen. Laws 1167, 1168 (emphasis added).

**D.     Analysis**

*1.     Effective Date*

In *Howland v. State*, 990 S.W.2d 274, 277 (Tex. Crim. App. 1999), the Court of Criminal Appeals held that "article 38.37 is applicable to any one of many isolated proceedings within a prosecution, so long as the proceeding at issue occurred after [the statute's effective date]." We conclude the trial court did not err in admitting B.F.'s testimony under article 38.37. *See Mata v. State*, 991 S.W.2d 900, 904 (Tex. App.—Beaumont 1999, pet. ref'd) (holding defendant's trial was a "criminal proceeding" for purposes of applying statute which governed admission of extraneous offenses during punishment phase and which applied to any criminal proceeding that commenced on or after effective date of statute, and thus, extraneous offenses were admissible under statute, even though defendant was indicted prior to effective date of statute). Dominguez's first issue is overruled.

*2.     Ex Post Facto *Laws*

a.     <u>Arguments of the Parties</u>

Dominguez next argues that the admission of B.F.'s testimony violated his constitutional right to be free from ex post facto laws under the Texas and United States Constitutions. *See* U.S. Const. art. I, § 10 cl. 1 (prohibiting passage of ex post facto law); Tex. Const. art. I, § 16 (same).

The State contends that the retroactive application of article 38.37, § 2(b) merely changed the way in which evidence may be placed before the jury and how that evidence is used.

### b. Ex Post Facto Prohibitions

An ex post facto law is any law that

(1)     punishes as a crime any act that was innocent when performed;
(2)     inflicts greater punishment than the law attached to a criminal offense when committed;
(3)     deprives the accused of any defense available at the time the act was committed; or
(4)     alters the legal rules of evidence and requires less or different testimony than the law required at the time of the commission of the offense to convict the accused.

*See Carmell v. Texas*, 529 U.S. 513, 522 (2000); *In re Hall*, 433 S.W.3d 203, 214 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). This case turns on an evaluation of the fourth category—changes to the rules of evidence.

In order to determine whether the testimony constituted an ex post facto application of amended article 38.37, we compare the statute with its predecessor, including any annotations, and decide whether the amended statute permits conviction under less or different evidence from that required under the previous statute. *See Lindsey v. State*, 672 S.W.2d 892, 894 (Tex. App.—Dallas 1984, pet. ref'd).

### c. Application of Texas Code of Criminal Procedure Article 38.37

In *McCulloch v. State*, 39 S.W.3d 678 (Tex. App.—Beaumont 2001, pet. ref'd), the appellant also raised an ex post facto challenge to the original version of article 38.37, also enacted after appellant's charged offense. Prior to that enactment, similar sex offenses against the same child complainant were not admissible to show the defendant's propensity or character conformity. After the enactment, such similar offenses against the same complainant were admissible to show the defendant's propensity to commit the act or to show conformity to character.

The Beaumont Court of Appeals held that there was no ex post facto violation because the change in the evidentiary rule did not "lower the quantum of evidence necessary to support a conviction for aggravated sexual assault," and did not eliminate an element of the offense to be proved. *Id*. at 683–84. We agree with this reasoning.

Article 38.37, section 2(b) allows testimony regarding other extraneous offenses to show character conformity. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). The statute neither changes the State's burden of proof to support a conviction for sexual assault of child nor lessens the amount of evidence required to sustain a conviction. *McCulloch*, 39 S.W.3d at 694.

Accordingly, we cannot conclude that an ex post facto violation occurred, and we overrule Dominguez's second issue.

We next turn to Dominguez's assertion the trial court erred in sentencing him under the first degree felony punishment guidelines.

## SAFE RELEASE

In his last issue on appeal, Dominguez contends that because he voluntarily released D.P. in a safe place, the trial court erred by sentencing him to a term of sixty-years' confinement, in accordance with a first-degree felony, when the maximum term of punishment should have been that of a second-degree felony, which carries a maximum confinement of twenty years. *See* TEX. PENAL CODE ANN. § 12.33(a) (West 2011).

The trial court denied Dominguez's request to make the finding of voluntary safe release, and instead assessed punishment within the first-degree felony range, stating: "So I will refrain from making the finding that [defense counsel] has asked. That is an appellate point. He's asked for it, it's denied."

**A.      Voluntary Release Under Texas Penal Code Section 20.04(c)**

Aggravated kidnapping is a first-degree felony punishable by a term of imprisonment between five years to life. *Id.* § 20.04(c), 12.32(a). Section 20.04(d) provides: "At the punishment stage of a trial, the defendant may raise the issue as to whether he voluntarily released the victim in a safe place. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree." *Id.* § 20.04(d); *accord Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998). A second degree felony is punishable by a term of imprisonment between two and twenty years. TEX. PENAL CODE ANN. § 12.33(a).

*1.      Defendant's Burden of Proof*

The statute requires the defendant to prove voluntary release in a safe place by a preponderance of the evidence, a lesser standard of proof than is required during the guilt-innocence phase of a criminal trial. *See Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). To satisfy this standard, the defendant must create, by the greater weight of the credible evidence, a reasonable belief that the defendant voluntarily released the victim in a safe place. *See Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974).

*2.      Standard of Review*

Dominguez's sufficiency claim is evaluated for both legal and factual sufficiency. *See Butcher v. State*, No. PD-1662-13, 2015 WL 359087, at *5 (Tex. Crim. App. Jan. 28, 2015) ("Affirmative defenses may be evaluated for legal and factual sufficiency, even after this Court handed down its opinion in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)."). "In a legal-sufficiency review of an affirmative defense, reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *Id.* (citing *Matlock v. State*, 392 S.W.3d 662, 669–70 (Tex. Crim. App. 2013)). The finding of the factfinder rejecting a defendant's affirmative

defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and "no reasonable [factfinder] was free to think otherwise." *Id.* (citing *Matlock*, 392 S.W.3d at 670).

"In a factual-sufficiency review of a finding rejecting an affirmative defense, and unlike in a legal-sufficiency review, courts examine the evidence in a neutral light." *Id.* (citing *Matlock*, 392 S.W.3d at 671). "A finding rejecting a defendant's affirmative defense cannot be overruled unless, 'after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.'" *Id.* (citing *Matlock*, 392 S.W.3d at 670).

### 3. *Evidence Required by Defendant*

Section 20.04 requires proof the accused "performed 'some overt and affirmative act' which brought home to his victim that she had been 'fully released from captivity.'" *Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "That release must have occurred in a place and manner which realistically conveyed [to the victim] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Id.*; *accord Woods v. State*, 301 S.W.3d 327, 331 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The term "voluntarily" in section 20.04(d) is interpreted narrowly to mean the absence of "'rescue by the police [or others] or escape by the [kidnap] victim.'" *Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003).

Factors to consider in determining whether the defendant released the victim in a safe place include the following:

(1)    the remoteness of the location;
(2)    the proximity of authorities or persons who could aid or assist;
(3)    the time of day;
(4)    climatic conditions;
(5)    the condition of the victim;

(6)     the character of the location or surrounding neighborhood; and

(7)     the victim's familiarity with the location or surrounding neighborhood.

*Woods*, 301 S.W.3d at 331–32; *accord West v. State*, 406 S.W.3d 748, 766 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *Lavarry v. State*, 936 S.W.2d 690, 696 (Tex. App.—Dallas 1996, pet. dism'd).

## B.     Arguments of the Parties

Dominguez argues that the trial court should have made the safe release finding because the evidence shows that (1) the location where the complainant was released was not remote; (2) there was a telephone in the motel room and a pizza place nearby; (3) it was not a dangerous hour; (4) it was a warm January afternoon; (5) the complainant was uninjured; (6) the motel was located in a "well built up neighborhood" near a children's shelter, a shopping center, and a pizza place; (7) and the complainant knew that she was at a motel in San Antonio, and was able to direct her sister to come get her.

The State counters that Dominguez did not release D.P., but rather abandoned her in the motel room. The State does not contend that Dominguez acted involuntarily, and we agree that the record is devoid of any evidence indicating that Dominguez involuntarily left the motel at the urging of police or any other individual. *See Brown*, 98 S.W.3d at 188 (narrowly defining "voluntarily" as the absence "of rescue by the police [or others] or escape by the [kidnap] victim").

Although Dominguez argues that the girls voluntarily accompanied him to the motel, Dominguez does not appeal the sufficiency of his kidnapping conviction. Our analysis, therefore, is limited to whether the trial court erred in (1) failing to find Dominguez voluntarily released D.P. in a safe place and (2) subjecting Dominguez to the first-degree penalty range of punishment.

C.      Evidence Adduced at Trial

D.P. testified that she accepted Dominguez's request to meet her and a friend at the post office near her friend's house. After leaving the post office with Dominguez, the three visited D.P.'s friend's boyfriend's house, and Dominguez drove the girls to a motel where he sexually assaulted D.P. After the assault, D.P. joined her friend in the bathroom and locked the door.

Both parties agree that Dominguez knocked on the bathroom door and told D.P. that he was leaving, and it is undisputed that Dominguez left the motel. After falling asleep in the bathroom for approximately thirty minutes, D.P. exited the bathroom and began making calls on the telephone located in the motel room. Her sister agreed to come pick up the girls, but neither D.P. nor her friend knew where the motel was located. The girls ultimately ended up running to a Pizza Hut where they called D.P.'s sister and provided her with an address for their location.

Approximately five days after the alleged assault, police questioned Dominguez. Dominguez's own testimony refutes his contention that he released D.P. Specifically, a video-recorded interview of Dominguez was played for the jury wherein Dominguez, *in his own words*, contradicts the elements required to prove the affirmative defense of voluntary release.

After being *Mirandized*, Dominguez explained to the officer that he picked up D.P. and her friend because "they needed rides." *At their request*, Dominguez claims he took the girls to the friend's boyfriend's house. But when the boyfriend did not want the girls at his house, and Dominguez was late for an appointment to get plasma, he had no option but to take the girls to the Sahara Motel.

Dominguez testified that he instructed the girls to stay in the room. "I told them you have to stay here unless y'all want to wait [at the plasma center] in the car for two hours. So they said OK." After approximately twenty minutes, and after he sexually assaulted D.P., Dominguez left for his appointment. Dominguez further explained that he told the girls that *he would be back* and

"left them cigarettes and a lighter." Dominguez claimed to be surprised when he returned to the motel and the girls were gone and told the officer that he "didn't know what happened." Dominguez was adamant that, before he left, he told the girls that he would bring back food.

As further evidence of Dominguez's intent that D.P. was to remain in the motel room, Dominguez told the officer that he called the room twice to see what the girls wanted to eat, but they did not answer. Dominguez was resolute that "they were happy. I was going to come back with food."

## C.    Analysis

To satisfy the voluntary release provision, Dominguez was required to bring forward some evidence that he voluntarily released D.P. in a safe place. *See West*, 406 S.W.3d at 766 (citing *LaHood v. State*, 171 S.W.3d 613, 624–25 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)); *see also Ballard v. State*, 161 S.W.3d 269, 273 (Tex. App.—Texarkana 2005) ("[T]he application of Section 20.04(d) should focus on whether the defendant performed an act of release . . . ."), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006). To be voluntary, however, "the release must not have been occasioned by . . . escape by the victim." *LaHood*, 171 S.W.3d at 624 n.5 (citing *Brown*, 98 S.W.3d at 183–88); *accord Ballard v. State*, 193 S.W.3d 916, 919 (Tex. Crim. App. 2006).

"[I]n order to avail himself of the mitigating effect of § 20.04(b), [Dominguez] must have performed some overt and affirmative act that [brought] home to [D.P.] that [she had] been fully released from captivity." *Wiley v. State*, 820 S.W.2d 401, 411 (Tex. App.—Beaumont 1991, no pet.); *accord Ballard*, 193 S.W.3d at 919; *Ex parte Chandler*, 182 S.W.3d 350, 355 & n.18 (Tex. Crim. App. 2005); *Harrell*, 65 S.W.3d at 772; *see also Gaither v. State*, No. 04–10–00548–CR, 2011 WL 3915820, at *4–5 (Tex. App.—San Antonio Sept. 7, 2011, no pet.) (mem. op., not designated for publication) (holding that appellant was not entitled to "safe release" instruction where there was no evidence that appellant "took any affirmative act to *release*" the victim). In

other words, Dominguez had to release D.P. in a "manner which realistically conveyed to [D.P.] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Harrell*, 65 S.W.3d at 772. Courts have further explained that a victim's escape from captivity does not entitle a defendant to an instruction on the issue of voluntary release. *Ex parte Chandler*, 182 S.W.3d at 355 & n.18; *Cooks v. State*, 169 S.W.3d 288, 291 (Tex. App.—Texarkana 2005, pet. ref'd); *Harrell*, 65 S.W.3d at 772–74.

This case turns on whether Dominguez committed an "overt and affirmative act" which brought home to D.P. that she was "fully released from captivity." *See Harrell*, 65 S.W.3d at 772. D.P. testified that Dominguez said, "That he's going to leave now, that he's leaving us there." She agreed that he "knocked [on the bathroom door] and says, Hey, I'm leaving and takes off." She then stated that she cried with her friend and that she "fe[l]l asleep for like 30 minutes. And then I woke up and we went back out into the room where the phone was. And [my friend] sat on the sofa near the bed and I sat on the bed and I started calling everybody that I knew that could come pick us up." After making contact with her sister, D.P. and her friend then "ran to Pizza Hut," where they again called her sister to pick them up.

In *Ballard v. State* (*Ballard I*), 161 S.W.3d 269 (Tex. App.—Texarkana 2005), *aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006), the defendant kidnapped his ex-girlfriend, and forced her, at gunpoint, "to accompany him to his house, had admittedly consensual sex with her, and then asked her to accompany him in a car on a local bill-paying trip—even leaving her alone in the passenger seat of the car two times during the trip while he went into businesses to pay bills." *Id.* at 270. The two later returned to the defendant's house, where the police eventually arrived. *Id.* at 275. On appeal, the defendant argued that he was entitled to the safe release defense because "he voluntarily released [the victim] in a safe place within the meaning of the statute because he left her alone in the car, twice, giving her the power to escape." *Id.* at 272.

The *Ballard I* court noted that even though the victim could have safely driven away, the evidence indicated that the defendant intended to return to the car *momentarily*, that he knew how to find the victim later had she driven off, and that the defendant had some continuing power over the victim during the time he left to run his errands. *Id*. at 276. Further, the kidnapping did not cease until the police intervened, meaning that the defendant did not commit an overt and affirmative act to release the victim. *Id*. at 275; *see also Brown*, 98 S.W.3d at 188 (holding action cannot be voluntary where element of rescue by police exists). Thus, the *Ballard I* court held that the evidence was legally sufficient to support the trial court's determination that the appellant did not commit an overt and affirmative act; and, therefore, the appellant did not voluntarily release the victim. *Ballard I*, 161 S.W.3d at 275.

The Court of Criminal Appeals rationale in *Ballard II* is instructive. *Ballard v. State* (*Ballard II*), 193 S.W.3d 916, 919 (Tex. Crim. App. 2006). The *Ballard II* court held that even though the victim "thought she was free to go and no longer felt as though she was in danger[,] . . . such actions by the kidnapper did not constitute the voluntary release of the victim in a safe place." *Id*. at 919–20. Here, although D.P. and her friend both used the phone and left the motel room, these actions are more consistent with escape rather than voluntary release. *See id.* at 919–20; *see also Ex parte Chandler*, 182 S.W.3d at 355 & n.18; *Cooks*, 169 S.W.3d at 291 (requiring release without any element of escape by victim); *Harrell*, 65 S.W.3d at 772 (explaining that defendant's absences from the room were not overt and affirmative acts).

The record simply does not contain any evidence that D.P.'s freedom was the result of any overt or affirmative act by Dominguez, or even that Dominguez intended to release D.P. The record contains more than a scintilla of evidence that Dominguez did not voluntarily release D.P. *Butcher*, 2015 WL 359087, at *6. We, thus, conclude the trial court properly concluded the evidence was legally insufficient to support Dominguez's claim that he voluntarily released D.P.

We also conclude, considering all of the surrounding circumstances, there is ample evidence that the trial court could have reasonably concluded Dominguez did not voluntarily release D.P. *Id.* We cannot say the trial court's rejection of Dominguez's affirmative defense is "'against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.'" *Id*. (quoting *Matlock*, 392 S.W.2d at 671).

Accordingly, we overrule Dominguez's last issue on appeal.

### CONCLUSION

Having overruled all of Dominguez's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

PUBLISH



# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-13-00789-CR

John Christopher **DOMINGUEZ**,
Appellant

v.

The
The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR3592
Honorable Sid L. Harle, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice
               Luz Elena D. Chapa, Justice

Delivered and Filed:  March 25, 2015

The Legislature saw fit to mitigate the punishment in aggravated kidnappings where the defendant voluntarily releases his victim in a safe place.  A victim is released when she realizes that she is freed from captivity.  In this case, both the victim's testimony that the defendant was "gone" and her actions in telephoning her sister to pick her up and then leaving the motel clearly reflect her realization that she was freed from captivity.  Because the majority completely ignores the victim's testimony and actions and instead erroneously views the evidence regarding "release" solely from the defendant's perspective, I respectfully dissent.

*Evidence at Trial*

Dominguez and sixteen year-old D.P. met while chatting on Facebook in late 2012. Facebook messages admitted into evidence showed that Dominguez told D.P. that he would take her shopping and buy her a cell phone and clothes. D.P. told Dominguez that she would be his "sugar baby." On January 18, 2013, D.P. agreed to let Dominguez pick up her and a friend and together they all went to the mall.

D.P. testified that two days later she agreed to let Dominguez pick her and a friend up from a post office near her friend's house. Before he picked her up, D.P. messaged Dominguez and told him, "Oh but one thing i needa say, i dont give head and i dont do anal[;] and I rarely kiss on the mouth." After some time passed, Dominguez drove the girls to a motel where he sexually assaulted D.P. D.P. testified that after the assault, she joined her friend in the bathroom and locked the door. She testified that Dominguez knocked on the bathroom door and told her that he was leaving. It is undisputed that Dominguez then left the motel. D.P. testified that after Dominguez left, she fell asleep in the bathroom for about 30 minutes. Once she awoke, D.P. exited the bathroom and began making calls on the telephone located in the motel room. She was able to reach her sister, who agreed to come pick up her and her friend. D.P. did not know where the motel was located, so her sister instructed her to go outside and look for the nearest intersection. D.P. went to the motel's front office to ask for directions, but no one was there. D.P. returned to the motel room and told her sister she was going to walk to a nearby restaurant. D.P. and her friend then walked to a Pizza Hut and again called her sister from the restaurant's telephone. Twenty minutes later, her sister arrived at the Pizza Hut.

Approximately five or six days later, Dominguez was questioned by the police. In the interview, Dominguez stated that on the day in question, he had an appointment to "get" plasma;

Dominguez indicated the process takes about two hours. He told the officer he could not take the girls with him to the plasma center, so he told the girls to stay in the motel room unless they wanted to wait in his car for two hours at the plasma center. He told the girls that he would bring back some food, and he said he called the room twice to ask what they wanted to eat. Dominguez stated that he was surprised when he returned to find the girls gone.

The trial court denied Dominguez's request to make a finding of voluntary safe release, and instead assessed punishment within the first degree felony range, stating: "So I will refrain from making the finding that [defense counsel] has asked. That is an appellate point." Dominguez does not challenge on appeal the kidnapping or sexual assault charge.

### *Burden of Proof and Applicable Law*

In reviewing the evidence presented at trial, I am mindful that Dominguez was required to prove that he (1) voluntarily (2) released D.P. in a (3) safe place by a preponderance of the evidence, which is a lesser burden of proof than the "beyond a reasonable doubt" criminal burden of proof. *See* TEX. PENAL CODE ANN. § 20.04(d) (West 2011); *Hacker v. State*, 389 S.W.3d 860, 864-65 (Tex. Crim. App. 2013); *Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim. App. 1998). To satisfy this burden, the "greater weight of the credible evidence" must create a "reasonable belief" that the defendant voluntarily released the victim in a safe place. *See Scamardo v. State*, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974). In addressing sufficiency of the evidence to support an adverse finding on an affirmative defense, the Court of Criminal Appeals has recently directed,

> [i]n a legal-sufficiency review of an affirmative defense, reviewing courts should first assay the record for a scintilla of evidence favorable to the factfinder's finding and disregard all evidence to the contrary unless a reasonable factfinder could not. *See Matlock v. State*, 392 S.W.3d 662, 669-670 (Tex. Crim. App. 2013). The finding of the factfinder rejecting a defendant's affirmative defense should be overturned for lack of legal sufficiency only if the appealing party establishes that the evidence conclusively proves his affirmative defense, and 'no reasonable [factfinder] was free to think otherwise.' *Id.* at 670.

In a factual-sufficiency review of a finding rejecting an affirmative defense, and unlike in a legal-sufficiency review, courts examine the evidence in a neutral light. *Id.* at 671. A finding rejecting a defendant's affirmative defense cannot be overruled unless, 'after setting out the relevant evidence supporting the verdict, the court clearly states why the verdict is so much against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.' *Id.*

*Butcher v. State*, --- S.W.3d ---, No. PD-1662-13, 2015 WL 359087, at \*5 (Tex. Crim. App. Jan. 28, 2015).

To avail himself of the mitigating effect[1] of Section 20.04(d), Dominguez must have proved by a preponderance of the evidence that he "performed 'some overt and affirmative act' which brought home to his victim that she had been 'fully released from captivity.'" *Harrell v. State*, 65 S.W.3d 768, 772 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). "That release must have occurred in a place and manner which realistically conveyed to [the victim] that she was then freed from captivity and in circumstances and surroundings wherein aid was readily available." *Id.*; *Woods v. State*, 301 S.W.3d 327, 331 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

The term "voluntarily" in Section 20.04(d) is narrowly interpreted as the absence of "rescue by the police [or others] or escape by the [kidnap] victim." *Brown v. State*, 98 S.W.3d 180, 188 (Tex. Crim. App. 2003). The Court of Criminal Appeals has defined "escape" to mean "to get oneself free from confinement or control." *Russell v. State*, 90 S.W.3d 865, 870 (Tex. App.—San Antonio 2002, pet. ref'd) (quoting *Estep v. State*, 901 S.W.2d 491, 495 (Tex. Crim. App. 1995)).

---

[1] I am constrained by the Court of Criminal Appeals' recent decision in *Butcher v. State*, - - - S.W.3d - - -, No. PD-1662-13, 2015 WL 359087, at \*5 (Tex. Crim. App. Jan. 28, 2015), to review the trial court's rejection of Dominguez's request for a finding that he voluntarily released D.P. in a safe place as an affirmative defense, and not as a mitigation issue. *See id.* at \*7 (Meyers, J., dissenting, and noting that the majority incorrectly analyzes the section 22.04(d) issue as an affirmative defense instead of a mitigation issue); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(f)(4) (West Supp. 2014) (mitigating evidence is evidence that might reduce the defendant's "moral blameworthiness"); *compare Resendiz v. State*, 112 S.W.3d 541, 550 (Tex. Crim. App. 2003) (a positive jury finding on a mitigation issue has the potential to reduce a defendant's sentence); *with Gilbert v. State*, PD-1645-08, 2010 WL 454966, at \*6 (Tex. Crim. App. Feb. 10, 2010) (not designated for publication) (Keller, P.J., concurring) (affirmative defense absolves defendant of criminal liability for an offense).

It is undisputed that Dominguez left the motel room voluntarily,[2] i.e., absent any "rescue by the police [or others] or escape by the [kidnap] victim." *See Brown*, 98 S.W.3d at 188. Under *Brown*, the uncontested "voluntary" element necessarily disposes of any consideration of "escape." The majority must "agree that the record is devoid of any evidence indicating that Dominguez involuntarily left(,)" i.e., there is no evidence supporting the trial court's rejection of the "voluntary" element of the affirmative defense.

### *Analysis - Was D.P. "Released"?*

The question then becomes, was there evidence of "release?" Did Dominguez perform an "overt and affirmative act" which caused D.P. to realize that she was "fully released from captivity?" *Harrell*, 65 S.W.3d at 772. D.P. testified that Dominguez told her, "That he's going to leave now, that he's leaving us there." She stated that he "knocked [on the bathroom door] and says, 'Hey, I'm leaving' and takes off." She then stated that she cried with her friend and then she "fe[l]l asleep for like 30 minutes. And then I woke up and we went back out into the room where the phone was. And [my friend] sat on the sofa near the bed and I sat on the bed and I started calling everybody that I knew that could come pick us up." Once D.P. reached her sister, her sister—assuming that Dominguez was still in the motel room—told D.P. to "[j]ust listen to whatever he says and just don't give him any reason to hurt you." D.P. told her, "Well, he's already gone." Her sister then said, "Okay, well, run to the nearest intersecti[on]. . ." D.P. then left the room and went to the motel's front office to see if she could find the exact location of the motel, but no one was there. She waited five minutes, and then went back to the motel room to tell her

---

[2] The Court of Criminal Appeals held that the term "voluntarily" was ambiguous as used in the language of the aggravated-kidnapping statute because it was "susceptible to different meanings some of which would support a holding that appellant's release of the victim was voluntary and some of which would support a contrary decision." *Butcher*, 2015 WL 359087, at *2 (citing *Brown*, 98 S.W.3d at 183). Whether the appellant's release was voluntary is undisputed here.

sister that she was just going to go to the nearest store. D.P. and her friend then "ran to Pizza Hut," where they again called her sister; her sister came to the Pizza Hut twenty minutes later and picked them up.

I believe the record lacks even a scintilla of evidence that Dominguez did not release D.P. D.P. is told by Dominguez and later assures her sister that Dominguez has left her in the motel room. The record is notably devoid of any evidence indicating that D.P. did not realize she was "fully released from captivity" once Dominguez left the motel, or that D.P.'s liberty was substantially interfered with by any threat or restraint. Although Dominguez told the police that he told the girls he was coming back with food, D.P. never testified she heard him say he was going to return or that she otherwise feared or expected his return at any time. Even assuming she heard Dominguez say he would return, the possibility of his return posed no substantial interference in her ability to leave the motel room. Noteworthy, the record is wanting of evidence that could reasonably support a finding that she was afraid or felt it was unsafe to leave the motel room, that she felt confined, or under the kidnapper's control, or that her liberty was restrained in any way. The majority's reasoning must assume facts to support the rejection of a finding of "release," i.e., that D.P. knew Dominguez would eventually return, and that D.P. did not realize that she was released from "captivity." In fact, the State contends that Dominguez abandoned D.P. in the motel room, which in my opinion essentially concedes that Dominguez not only released her but relinquished any further course of action that involved D.P.[3]

The majority's assumptions are not based on record evidence and, in fact, conflict with D.P.'s actions following the defendant's departure. D.P. testified she slept for thirty minutes before exiting the bathroom. D.P. remained in the motel room while repeatedly using the readily-

---

[3] "Abandon" is defined as "[t]o relinquish or give up with intent of never again resuming one's right or interest." BLACK'S LAW DICTIONARY 2 (5th ed. 1979).

available telephone to call for a ride and assured her sister that Dominguez was "gone." She left

and later returned to the motel room before finally leaving for a nearby Pizza Hut. The record

contains no evidence indicating D.P. had any sense of a continuing restraint, an expectation of the

kidnapper's return at any time, or a fear or threat of pursuit.

The majority's reliance on *Ballard v. State*, 161 S.W.3d 269 (Tex. App.—Texarkana 2005),

*aff'd*, 193 S.W.3d 916 (Tex. Crim. App. 2006), is misplaced. *Ballard*, unlike the present case,

involved (1) police intervention and rescue, and (2) kidnapping by gunpoint and "some continuing

control over the victim" precluding a finding of (i) voluntary (ii) release. *Id.* at 274-76. The

*Ballard* facts support a legal finding by the factfinder rejecting the affirmative defense. Although

the Court of Criminal Appeals found "such actions by the kidnapper" determinative, the majority

here focuses instead on the actions of D.P. (using the phone and leaving the motel room) as

"actions more consistent with escape rather than voluntary release" and refers without explanation

to "ample evidence" that Dominguez did not voluntarily release D.P. "considering the surrounding

circumstances."[4] On review, this court should properly consider the undisputed voluntariness of

Dominguez's conduct in telling D.P. he was leaving and then leaving the motel, the absence of

rescue, the victim's acknowledgment that he was gone, and the lack of evidence of any continuing

threat or actual restraint of liberty, confinement or control over D.P. after Dominguez's departure

that effectively prevented her from using the phone and leaving. Certainly, the record contains no

evidence of actual harm or risk of harm posed to D.P. based on her having been left in the motel

room or upon her leaving the motel.

---

[4] The majority also relies on Dominguez's statement to police that he told the girls to either stay in the motel room or wait in his car for two hours while he went to get plasma as evidence that he did not intend to release D.P.; the majority, however takes Dominguez's statement out of context. The statement Dominguez claimed to make to D.P. was not made as a warning or a threat, but merely as an explanation to the police as to why he left the girls unattended in the motel room.

Further, I disagree with the majority that testimonial evidence from Dominguez's recorded interview - that Dominguez told them "you have to stay here," that "he would be back," that he *intended* to return and for the girls to remain in the motel room, precludes the requested affirmative defense. A kidnapper's intent or motives, without evidence of "some continuing power over the victim during the time he left," exerted through violence or threat of violence, is inapposite. *See Butcher*, 2015 WL 359087, at *7 (Newell, J., concurring). "Section 20.04 does not require a showing of the defendant's motive in releasing the victim or that he take affirmative steps to undo the consequences of his conduct." *Butcher*, 2015 WL 359087, at *7 (Newell, J., concurring); *Brown*, 98 S.W.3d at 188 (Meyers, J., concurring) (noting that voluntary release does not consider the defendant's subjective motives). Without more, there is less than a scintilla supporting the rejection of the affirmative defense. The trial court's rejection of the requested affirmative defense should be overturned since, as explained herein, the evidence conclusively proves his affirmative defense and no reasonable factfinder was free to think otherwise.

Moreover, I believe the court's rejection of the affirmative defense was so against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased.

The other authorities cited by the majority are likewise distinguishable. In *Ex parte Chandler*, 182 S.W.3d 350, 356 (Tex. Crim. App. 2005), the Court held there was no voluntary release where the defendant left the victims, who had been tortured and sexually abused, in an apartment behind locked burglar bars, forcing the victims to exit through a second-story window and climb down a tree. Clearly, in that situation, the victims were not free to depart unhindered, but were forced to escape under unsafe conditions. In *Cooks v. State*, 169 S.W.3d 288, 291-93 (Tex. App.—Texarkana 2005, pet. ref'd), the defendant escorted his kidnapping victim to the hospital with a gun in his pocket and told her not to talk; it was not until hospital personnel

intervened and separated the victim from the defendant that she felt released from captivity and told them that he had kidnapped her and that she sustained her injuries by jumping out of the car in an attempt to escape. Undoubtedly, such conduct by the defendant does not constitute an "overt and affirmative act" which would signal to the victim that she was "fully released from captivity." *See Harrell*, 65 S.W.3d at 772. Finally, the majority cites *Harrell*, in which the court of appeals held that the defendant was not entitled to a safe release finding where he left his victim, who had been abducted at knifepoint, bound and gagged on the side of the road. *Id.* The court of appeals went on to state that it need not decide whether the victim was actually "released" because the record contained ample evidence that she was not left in a "safe place." *Id.* at 772-73 (noting the victim was left, in the early morning hours of a cold winter's day, on the side of a sparsely populated, dimly lit road, which had been the site of numerous crimes; also, a pack of wild dogs roamed the area).

Simply put, every opinion that has affirmed the rejection of a safe release finding on the specific issue of "release" contains fact scenarios that are simply not on par with the "release" evidence before us. *See, e.g., Gaither v. State*, No. 04-10-00548-CR, 2011 WL 3915820, at *5 (Tex. App.—San Antonio Sept. 7, 2011, no pet.) (mem. op.) (not designated for publication) (no voluntary release even though defendant left the house where the victim was assaulted because the victim had been strangled to the point of unconsciousness and was left in the company of a person who was a party to her earlier beating); *Girdy v. State*, 175 S.W.3d 877, 880-81 (Tex. App.—Amarillo 2005), *aff'd*, 213 S.W.3d 315 (Tex. Crim. App. 2006) (no voluntary release where defendant did not stop vehicle carrying victim until directed to do so by police); *Fowler v. State*, 958 S.W.2d 853, 860 (Tex. App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex. Crim. App. 1999) (no release where police demanded that defendant surrender and release victim).

While *Ballard* and the other cases cited by the majority are inapplicable to the case before us, I find *Lavarry v. State*, 936 S.W.2d 690, 696-99 (Tex. App.—Dallas 1996, pet. dism'd), compelling for its discussion regarding "release." In that case, the defendant held his ex-girlfriend and her boss at gunpoint for almost four hours at the ex-girlfriend's apartment. *Id*. at 693. The defendant eventually left the boss at the apartment and took his ex-girlfriend with him. *Id*. Before he left, the defendant told the boss not to call the police or he would kill the ex-girlfriend. *Id.* The ex-girlfriend then drove the defendant to his best friend's aunt's house. *Id*. When they arrived, the defendant again told the ex-girlfriend, "I told your friend not to call the police, but I know they are already over there. But you haven't heard the last of this. If the police are involved, I'll be back." *Id*. He also took the gun that he had been pointing at her side and said, "Hum. Well, I better take this with me because I'm going to need it." *Id*. He then got out of the car and the ex-girlfriend drove away. *Id*. She returned to her apartment and talked to the police, who had been called by her boss. *Id*. at 693, 698-99.

The *Lavarry* court held that even though the defendant threatened to kill or hurt his victims if they called or talked to the police, they were nonetheless released in a safe place. *See id*. at 698-99. Despite the defendant's threats, the victim in fact called the police once the defendant left. *Id*. Thus, the court explained that the threats to kill did not constitute a continuing restraint because there was no "substantial interference" with the victims' liberty by confinement, especially where such threats had no effect on the victims' liberty as demonstrated by the fact that the police were immediately called. *Id*. at 698.

*Lavarry* is instructive because it properly examines the actions of the victim following the defendant's departure to determine whether the victim realized he or she had been released from captivity. The majority in the present case fails to conduct such an examination, and instead

focuses improperly on Dominguez's intent and motives, ill or otherwise. Again, even assuming that D.P. feared Dominguez's return, the threat of return did not constitute a continuing restraint because there was no "substantial interference" with her liberty as demonstrated by the fact that she could readily place several telephone calls, including to her sister, leave the room and later return to the room. *See id.* Because the greater weight of the credible evidence creates a reasonable belief that D.P. realized that she had been released from captivity, I am compelled to conclude that Dominguez met his burden of proving that he voluntarily released D.P. in accordance with Section 20.04(d). *See* TEX. PENAL CODE ANN. § 20.04(d); *Hacker*, 389 S.W.3d at 865; *Scamardo*, 517 S.W.2d at 298.

I would also conclude that Dominguez satisfied "the second prong" of Section 20.04(d) because D.P. was released in a safe place. The Court of Criminal Appeals has recently held that the term "safe place" is ambiguous and that the determination of whether a place is safe is fact-specific and should be made on a case-by case basis. *Butcher*, 2015 WL 359087, at *3. Nonetheless, the Court agreed that the following "nonexclusive aids" may be taken into consideration when making the "safe place" determination: (1) the remoteness of the location; (2) the proximity of authorities or persons who could aid or assist; (3) the time of day; (4) climatic conditions; (5) the condition of the victim; (6) the character of the location or surrounding neighborhood; and (7) the victim's familiarity with the location or surrounding neighborhood. *Id.* at *5 (citing *Williams v. State*, 718 S.W.2d 772, 774 (Tex. App.—Corpus Christi 1986), *aff'd in part and rev'd in part on other grounds*, 851 S.W.2d 282 (Tex. Crim. App. 1993)). The Court cautioned that these factors must be considered under the totality of the circumstances of each case. *Butcher*, 2015 WL 359087, at *5. For example, the Court noted that age may be a factor in determining whether a place is safe. *Id.* at *5 & n.10 (affirming rejection of safe place finding

where nine-year-old girl was kidnapped at knifepoint and later returned to her apartment complex but her mother was not at home and she had no access to a phone or transportation). In addition, "the victim's feelings of safety may be a factor in determining the safety of a place, but in no case [will] it convert[] an otherwise safe place (like a victim's home or operable car) into an unsafe place." *Storr v. State*, 126 S.W.3d 647, 653 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (quoting *Lavarry*, 936 S.W.2d at 697).

In applying the nonexclusive factors used to determine whether a location is safe for purposes of a Section 20.04(d) analysis, I believe that the following facts indicate that Dominguez released D.P. in a safe place:

- D.P., a sixteen year-old, was left in a motel room with her teenage friend.
- The motel was located in the City of San Antonio on a major thoroughfare in a commercial area; thus, the location was not remote.
- There was no evidence that the motel was located in an area known for criminal activity.
- The motel room contained an operable telephone which D.P. could have used to call 911, and which she did in fact use to *place several calls and* reach her sister, who later picked her up at a nearby Pizza Hut.
- At the time D.P. was released, it was approximately three o'clock in the afternoon; there was no indication that it was dark outside.
- The weather was temperate; D.P. was wearing shorts and a sweater.
- Although I am sensitive to the fact that D.P., a minor, was sexually assaulted, the record contains no evidence that she was otherwise threatened, injured, restrained, drugged, or unable to get to the telephone to call for assistance, as demonstrated by the fact that she made several calls from the telephone located in the motel room and then went to a nearby Pizza Hut to meet her sister.

The facts before this court are readily distinguishable from those cases that have held that the victim was not released in a safe place. *See, e.g., Rodriguez-Flores v. State*, 351 S.W.3d 612, 637 (Tex. App.—Austin 2011, pet. ref'd) (evidence sufficient to support jury's rejection of safe release finding where five-year-old boy was left alone in a dark stairwell of an unfamiliar apartment complex on a cold February night); *Woods v. State*, 301 S.W.3d 327, 332 (Tex. App.— Houston [14th Dist.] 2009, no pet.) (complainant not released in safe place when released at 4:00

a.m. in a sparsely populated area that had been the site of criminal activity, with no other people present); *Harrell*, 65 S.W.3d at 773 (complainant not released in safe place when the area was sparsely populated, dimly lit, the home of a pack of wild dogs, and the site of numerous burglaries, two sexual assaults, and two homicides and when the time of release was early morning in winter); *Rodriguez v. State*, 766 S.W.2d 360, 361 (Tex. App.—Texarkana 1989, pet. ref'd) (complainant who had been sexually assaulted was not released in a safe place when released during a winter night on a rural dirt road a few minutes' walk from a gas station when it was not clear she would find aid in the vicinity). Here, in contrast, D.P. at sixteen was left unrestrained in a motel located on a major city street. She was released in the afternoon, there was plenty of daylight, and the weather was comfortable. Although D.P. was unfamiliar with the motel's location, she was still able to call for assistance from a readily available telephone and direct her sister to a meeting place. *See, e.g., State v. White*, 492 S.E.2d 48, 53 (N.C. Ct. App. 1997) (holding kidnapping victim who had been severely beaten and sexually assaulted was released in a safe place when taken to a motel and given change to use a pay phone). D.P. walked with her friend to a nearby restaurant to wait for her sister, who arrived within twenty minutes. The record contains no evidence of a dangerous condition or known criminal activity in the area. I would therefore conclude that the greater weight of the credible evidence creates a reasonable belief that the location in which Dominguez voluntarily released D.P. was safe. *See* TEX. PENAL CODE ANN. § 20.04(d); *see also Hacker*, 389 S.W.3d at 865; *Scamardo*, 517 S.W.2d at 298.

Based on the foregoing, I would conclude that the evidence is legally insufficient to support the trial court's rejection of Dominguez's request for a safe release finding. No reasonable trier of fact could have concluded that D.P. was restrained in her liberty by confinement, much less forced to escape from the motel. *See Matlock*, 392 S.W.3d at 670. She knew her kidnapper had "gone,"

she was not held against her will, she felt free to leave, and she did in fact leave. I disagree that the kidnapper's intent to return equates to the scintilla of evidence required to affirm. D.P. was also a sixteen year old released in a location that was safe and in which aid was readily available. Thus, Dominguez conclusively proved that he voluntarily released D.P. in a safe place. *Id*. at 669-70.

In addition, the trial court's rejection of Dominguez's request for a safe release finding is so "against the great weight of the evidence as to be manifestly unjust, conscience-shocking, or clearly biased." *Matlock*, 392 S.W.3d at 671. While I am mindful against substituting my own judgment for that of the factfinder, this record contains ample evidence supporting a reasonable conclusion that there was a safe release. To conclude otherwise would be contrary to the legislative intent of Section 20.04(d), which is to provide an incentive to kidnappers to safely release their kidnap victims. *See Brown*, 98 S.W.3d at 187-88 (the plain language of Section 20.04(d) provides an "incentive" to kidnappers to release their kidnap victims; legislative purpose of Section 20.04(d) is to encourage kidnappers to release their kidnap victims). If Section 20.04(d) does not apply to the facts before us, I can imagine very few scenarios in which it would apply. I believe the facts before us warrant reversing the judgment of the trial court as to Count I and remanding the matter to the trial court for a new punishment hearing as to Count I. *See* TEX. CODE CRIM. PROC. ANN. art. 44.29(b) (West Supp. 2014). In all other respects, I would affirm the judgment of the trial court.

Rebeca C. Martinez, Justice

PUBLISH